# Richmond

ELSIE H. DAY AND OTHERS v. JOSEPH D. BRADSHAW AND OTHERS.

November 20, 1939.

Record No. 2103.

Present, All the Justices.

*Ashby Williams,* for the appellants.

*H. H. Watson* and *Fielding L. Wilson,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

The stipulated facts in this case are as follows:

Albert E. Clarke, while in the military service of the United States, took out a $10,000 yearly renewable term

War Risk Insurance policy. He named himself as bene-
ficiary. He died intestate December 13, 1918, while the
policy was in force. His heirs-at-law at the time of his
death were Dr. Frank V. Clarke, a brother, and the three
children of Bessie Clarke Bradshaw, a deceased sister,
namely Joseph D. Bradshaw, L. R. Bradshaw, Jr., and
T. C. Bradshaw.

On March 18, 1919, Dr. Clarke made an application to the
Bureau of War Risk Insurance, as sole beneficiary, for the
payments under the policy of his deceased brother. On
March 24, 1919, the Veterans' Bureau awarded to him the
sum of $57.50 per month, the full amount of the monthly
payments due under the policy, beginning from the date of
December 13, 1918. Dr. Clarke received these monthly
payments from that date until the date of his death on
December 14, 1934. The payments amounted to a total of
$11,040.

The three Bradshaws, nephews of Albert E. Clarke, re-
ceived no payments under the insurance policy.

Dr. Clarke died intestate, leaving surviving him as his
sole heirs-at-law his widow, Elsie H. Clarke, who has since
intermarried with a man named Day, and two infant chil-
dren, Frank D. Clarke, born April 4, 1929, and Thomas E.
Clarke, born September 27, 1931. He left no estate. H. E.
Mayhew, however, qualified as administrator thereof.

On June 1, 1935, the Bradshaws made inquiry of the
Veterans' Bureau as to the amount of insurance payable
under the policy of the deceased veteran. In reply, the
Bureau admitted an over-payment of $5,117.50 to Dr.
Clarke, and said that if it had known of the existence of
the nephews it would have amended the award to Dr.
Clarke to allow payment of one-half of the installments to
them from March 4, 1920, the effective date of the Act of
Congress of December 24, 1919. 41 Stat. 371. It de-
clined to recognize any claim of the Bradshaws to the un-
paid balance and advised them that the commuted value
thereof would be paid to the administrator of the estate of
the veteran.

At the time of Dr. Clarke's death, there remained to be paid in the future 48 monthly installments of $57.50 each, of a commuted present value of $2,582. This sum was paid to L. R. Bradshaw, administrator of Albert E. Clarke, the deceased soldier.

On October 7, 1937, L. R. Bradshaw, administrator, filed his petition in the Circuit Court of Nottoway county, asking direction for a proper distribution of the funds in his hands, received as proceeds from the insurance policy of Albert E. Clarke.

Joseph D. Bradshaw, L. R. Bradshaw, Jr., and T. C. Bradshaw, the nephews of the insured, claimed that they were entitled to the entire funds, since Dr. Clarke had received, in over-payments alone, a sum in excess of $5,000, to which they were lawfully entitled. The widow and children of Dr. Clarke denied that the latter had received any amount in excess of that to which he was lawfully entitled, or any amount to which the Bradshaws were entitled. They asserted their claim to one-half of the $2,582, proceeds in the hands of the administrator, as distributees of Dr. Clarke, under the Virginia laws of descent and distribution. They further contended that if there had been any over-payment of the monthly installments to Dr. Clarke, their rights as distributees of the deceased veteran were not affected.

The trial court by decree entered on March 21, 1938, held that the nephews of the deceased veteran were entitled to the entire fund of $2,582, less the costs of administration and the costs of the proceeding.

The policy of War Risk Insurance was issued under the Act of Congress of October 6, 1917, chap. 105, art. 4, sec. 400, 40 Stat. at L. 398, 409. The contract of insurance was made expressly subject, in all respects, to the provisions of that Act, to any amendments thereto and to all the regulations thereunder then in force or thereafter adopted.

At the time of the death of Albert E. Clarke, the War Risk Insurance Act, as amended June 25, 1918, 40 Stat. at L. 609, 615, section 21, provided that the insurance was payable in 240 monthly installments, and only in favor of a spouse,

child, grandchild, parent, brother or sister, and that "if no beneficiary within the permitted class be designated by the insured, * * * the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured be entitled to his personal property in case of intestacy."

By amendment of December 24, 1919, made effective as of October 6, 1917, 41 Stat. at L. 371, 375, section 13 (subsequently re-enacted in World War Veterans' Act, U. S. C. A., Title 38, section 511), the class of permitted beneficiaries was enlarged to include uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured. It further provided that all awards of insurance under the War Risk Insurance Act, as originally enacted and subsequently amended, should be revised as of the first day of the third calendar month after its enactment.

In 1924, Congress passed the World War Veterans' Act (June 7, 1924, chap. 320, sec. 1 et seq., 38 U. S. C. A. sec. 421 et seq.), revising and re-enacting all existing laws relating to soldiers' insurance, and repealing the War Risk Insurance Act, 43 Stat. at L. 607. Section 303 of the new Act, as amended March 4, 1925, 43 Stat. at L. 1310, U. S. C. A. Title 38, section 514, so far as material here, reads as follows:

"If no person within the permitted class be designated as beneficiary * * * by the insured * * * or if the designated beneficiary * * * dies prior to receiving all of the two hundred and forty installments * * * there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award: Provided, That all awards * * * which were in course of payment on the date of the approval of this Act (March 4, 1925), shall continue until the death of the person receiving such payments, * * *. When any person to whom such insurance was awarded prior to such date dies * * * there shall be paid to the estate of the insured the present value of

the remaining unpaid monthly installments of the insurance so awarded to such person: * * * This section shall be deemed to be in effect as of October 6, 1917."

Under the policy of insurance, the only relation of contract was between the insured soldier and the Government. It was not a contract entered into by the United States for gain. As said by Mr. Justice Holmes, in *White* v. *United States* (1926), 270 U. S. 175, 46 S. Ct. 274, 275, 70 L. Ed. 530, 531: "All soldiers were given a right, and the relation of the Government to them if not paternal was at least avuncular. It was a relation of benevolence established by the Government at considerable cost to itself and for the soldier's good. It was a new experiment in which changes might be found necessary, * * *. If the soldier was willing to put himself in the Government's hands to that extent no one else could complain." He further said that the interest of any beneficiary in the contract was vested only so far as the insured and the Government had made it so; that the contract was subject to any conditions upon which they might agree; and that the beneficiaries were merely volunteers.

In *Madden* v. *United States* (D. C.) (1936), 18 F. Supp. 534, 536, the court, following *White* v. *United States, supra,* said: "Congress had power to make retrospective changes in the insurance contract, altering rights that would ordinarily be deemed vested."

Subsequent amendments govern the disposition of proceeds from these policies, even where the insured has died before the enactment of such amendments. *Singleton* v. *Cheek* (1932) 284 U. S. 493, 52 S. Ct. 257, 76 L. Ed. 419, 81 A. L. R. 923; *McCullough* v. *Smith* (1934) 293 U. S. 228, 55 S. Ct. 157, 79 L. Ed. 297.

The estate of a beneficiary in a War Risk Insurance policy has no vested interest in the installments of the insurance due after the death of a beneficiary. *Price* v. *McConnell,* 153 Va. 567, 149 S. E. 515, and cases cited; 43 Stat. at L. 1310, U. S. C. A. Title 38, section 514.

The amendments in question here, by virtue of the original statute and the provisions, on their own faces, became and were retroactive to October 6, 1917.

In view of that fact, and the foregoing cases from the Supreme Court of the United States, *Hatch* v. *United States,* (D. C.) (1928), 29 F. (2d) 213, relied on by appellants, was expressly disapproved in *Madden* v. *United States, supra.*

The facts show that at the date of the death of Albert E. Clarke, the insured, in 1918, Dr. Clarke, the brother of the insured, was the only person within the then permitted class of beneficiaries entitled to receive monthly payments under the policy. With the enactment of the 1919 amendment, however, the three Bradshaws, his nephews, came within the enlarged class of permitted beneficiaries and were entitled jointly to receive one-half of the monthly payments under the policy. But notwithstanding the amendments to the Federal law and their retroactive effect, no award was made to the Bradshaws. The original award to Dr. Clarke was continued for the original full amount.

Upon the death of Dr. Clarke, the commuted value of the remaining unpaid monthly installments was paid to the estate of the insured,—the Veterans' Administration failing or refusing to make any adjustment in respect to the erroneous over-payments to Dr. Clarke.

The amendment of March 4, 1925, made a radical change in the method of paying installments. The provisions of the prior Acts, which, upon the happening of certain contingencies, limited the benefit of the unpaid installments to persons within the designated class of permittees, were abandoned, and the estate of the insured was wholly substituted as the payee. This was subject to proviso, however, that awards in course of payment on March 4, 1925, should continue until the death of the persons receiving such payment. Upon the death of such beneficiary, the commuted value of the remaining unpaid monthly installments was to be paid to the estate of the insured.

In the instant case, no person within the permitted class was designated as a beneficiary by the insured. If the award to Dr. Clarke, which was in course of payment at the time of the approval of the Act of March 4, 1925, had been a correct award, the case would present little difficulty. In that event, Dr. Clarke would have received only so much of the installments as he was entitled to. The other one-half of the installments from 1919 would have been paid to the nephews of the insured, or would have remained in the hands of the Veterans Administration for payment to them or to the estate of the insured. But the award was incorrect after 1919, and Dr. Clarke received payments which should have been made to the nephews.

While the several Acts of Congress relating to this subject are not as clear and explicit as they might be, they are sufficiently clear to show that Congress did not intend that an erroneous and excessive award should enrich one beneficiary at the expense of a fellow-beneficiary. The proviso of the Act of March 4, 1925, continuing awards in course of payment had reference to correct awards. The Veterans' Bureau had the power to modify and correct erroneous awards and to let in omitted beneficiaries. Where an award was incorrect, it was its duty to correct same, and to see that the funds arising from the policy of the insured reached those for whom they were intended. *Madden* v. *United States, supra; Reivich* v. *United States* (C. C. A. 6) 25 F. (2d) 670.

The right of the nephews to one-half of the installments accrued in 1919. That right was preserved by section 602 of the 1924 Act, 38 U. S. C. A. section 571, which provided that rights and liabilities accruing prior to its passage should not be affected.

In the case of *Madden* v. *United States, supra,* the facts were as follows:

Patrick Madden took out a War Risk Insurance policy in 1918, naming himself as beneficiary. He died on July 19, 1922, leaving surviving two brothers, Frank and David, as next of kin. The brother, Frank, died on September 5, 1923,

leaving surviving a widow and a son Frank, Jr. The brother, David, died on April 14, 1927, leaving surviving a widow and a daughter, Florence.

On November 12, 1924, the Veterans' Bureau acting on the application of David, who represented that he was the sole next of kin, and in ignorance of the existence of Frank and Frank, Jr., made an award in favor of David alone for monthly payments of $56.67, effective from the date of the insured's death. The monthly payments were continued until the death of David in 1927, amounting in all to $3,230.19. The Veterans' Bureau then received information of the actual facts. It determined the commuted value of the remaining installments at $8,082, paid to the administratrix of the insured $2,814.90, and withheld payment of the balance. The administratrix of the insured's estate brought action to recover the balance withheld.

The Federal court held that, from the proceeds remaining unpaid, the estate of Frank Madden was entitled to a sum representing one-half of the monthly installments that accrued between the death of the insured in 1922 and the death of Frank Madden in 1923, and that Frank Madden, Jr. was entitled to a sum representing one-half of the monthly installments that accrued from the death of his father in 1923, to the date of payment, and monthly installments for that amount thereafter, and that the remaining balance, if any, should be paid to the estate of the insured for distribution to the personal representatives of his two brothers living at his death, but since deceased. The court recognized that, even with that disposition, the personal representative of Frank Madden, Sr., would not receive his just due because of the over-payments obtained by David in his lifetime. It recommended a remedy of that injustice by the probate court when that court undertook to distribute the funds of the insured's estate between the personal representatives of Frank and David Madden, brothers of the insured.

Installments which accrue in favor of beneficiaries and are not paid during their lives become the property of the respective estates of the beneficiaries,—only the com-

muted value of the insurance due after the death of a beneficiary being payable to the estate of the insured. *McCullough* v. *Smith, supra; Singleton v. Cheek, supra.*

In *McCullough* v. *Smith, supra,* it appeared that Moses Reid took out a War Risk Insurance policy and designated his father and mother as beneficiaries. He died intestate in 1920, leaving no wife, child, or descendant. The father died in November, 1926, intestate, and the mother died in February, 1932. Her will designated an executrix. No payment of any kind was made under the policy prior to the mother's death. The Bureau of War Risk Insurance determined that, while alive, the father, as beneficiary, became entitled to installments amounting to $2,127.50, which was paid to his administrator, and that the mother, as beneficiary, during her life, became entitled to payments aggregating $3,938.75, which was paid to her executrix. It fixed the commuted value of the unpaid monthly installments, payable after the mother's death, at $5,768, and paid this to the executrix of the insured.

In a proceeding in a state court to secure direction as to the distribution of the funds in hand, that court held that all of the funds in the hands of the personal representative of the insured should be distributed equally to the estates of the mother and father, they being the persons entitled, under the laws of the State of residence of the insured, to the funds, as distributees of the personal property of the deceased soldier at the date of his death. The state court further held that the fact that one beneficiary lived longer than the other and hence was entitled to receive more money in installments, had nothing whatever to do with the rights of the distributees in the property. In reversing the State court, Mr. Justice McReynolds, speaking for the court, said [293 U. S. 228, 55 S. Ct. 158, 79 L. Ed. 297]:

"Considering what was said in *United States* v. *Worley,* 281 U. S. 339, 341, 50 S. Ct. 291, 74 L. Ed. 887, [889], and in *Singleton* v. *Cheek* [284 U. S. 493, 52 S. Ct. 257, 76 L. Ed. 419, 81 A. L. R. 923], *supra,* together with the language and evident purpose of the Act of 1924 as amended, we think it

clear enough that installments which accrued in favor of the father and mother of Reid as beneficiaries during their lives became the property of their respective estates. Also that installments which accrued to the assured during his lifetime, and the commuted value of the installments payable subsequent to the mother's death, became the property of his estate.

"The court below erred in directing that the installments which accrued to the beneficiaries — father and mother — during their lives should be treated as parts of the estate of the insured.

In the foregoing case, Reid designated his beneficiaries. In the instant case, Dr. Clarke and the Bradshaws were beneficiaries designated by law,—Dr. Clarke at the date of the death of the insured and the Bradshaws at the date the amendment of 1919 became effective. After the amendment, both had the same rights under the classification of beneficiaries,—Dr. Clarke to one-half of the monthly installments and the Bradshaws to the remaining one-half.

The installments which accrued to the Bradshaws and were not paid to them became their property,—not the property of the estate of the insured. Since the amount of such unpaid installments from 1919 to 1934 is greater than the sum of the proceeds of the policy in the hands of the administrator of the insured, the Bradshaws are entitled to all of such proceeds.

We arrive at the same conclusion if we consider the case purely on equitable principles.

The persons entitled to the commuted value of all the installments *accruing after the death of a beneficiary* in a certificate of insurance, which under the Act of Congress of March 4, 1925, 43 Stat. at L. 1310, is to be paid to the estate of the insured, are to be determined as of the date of the death of the insured and not as of the date of the death of the beneficiary. *Singleton* v. *Cheek, supra; Brooks* v. *Russ,* 159 Va. 25, 165 S. E. 499; *Stacy* v. *Culbertson,* 157 Va. 258, 160 S. E. 50.

Under the Virginia law in effect when the insured died in 1918, without widow, descendants, or parents surviving, the persons entitled to his personal property were his brother and his three nephews. Virginia Code 1936, sections 5264, 5273.

The widow and the children of Dr. Clarke were neither beneficiaries of the monthly installments from the insurance policy under the Federal law, nor were they distributees of Albert E. Clarke, as of the date of the death of the insured. As distributees of the estate of Dr. Clarke, they are entitled only to so much of the estate of the deceased soldier as may be allowed to the estate of Dr. Clarke.

It is true, as contended by the appellants, that no part of the installments paid to Dr. Clarke ever became any part of the estate of the deceased veteran. It is equally true that Dr. Clarke was not entitled to one-half of the installments he received after the amendment of December 24, 1919, became effective. The over-payments took property which rightfully belonged to the Bradshaws and should have been paid to them. If the payments due to the Bradshaws, but not paid to them, had been withheld from payment to Dr. Clarke, by the Veterans' Administration, the amount of the funds coming into the hands of the administrator of the insured for proper distribution would have been greatly increased. The rights and equities of the distributees thereof could readily have been determined.

In *Reivich* v. *United States, supra,* it was held that where a soldier's brother, who was also his administrator, had received War Risk Insurance installments due another beneficiary in her lifetime, the estate of the beneficiary, after her death, may set off such payments against the recovery of future payment by the brother suing as such administrator for his own personal benefit.

The estate of Dr. Clarke has no right in the funds that were paid to the administrator which was superior to the right of Dr. Clarke as a living distributee. As it happened, Dr. Clarke, in his lifetime, received far more than his just share from the proceeds of the insurance. In

equity and good conscience, the over-payments to him ought to be set off against a further recovery by his estate. The claim of the appellants being derived solely through the estate of Dr. Clarke, they are bound by the equities which affect that estate. The estate of Dr. Clarke not being entitled to recover against the estate of the insured, the appellants, as his distributees, are without recovery.

We find no error in the decree of the trial court, and its decree is affirmed.

*Affirmed.*