A92A1522. SCOTT v. THE STATE.
(424 SE2d 328)

BIRDSONG, Presiding Judge.

Robert D. Scott appeals from his judgment of conviction of burglary and the sentence.

Mr. Daniel heard a car engine running outside, looked out of his window, and saw a small blue car, with two people inside. The car was parked near a stop sign and "right next to Earl Scheib [body shop] on the side of the road at the curb." "The car was sitting still, but the motor was running." Windows on the driver's side were broken, though the driver's side window was patched with a "see-through" piece of plastic. After a minute or two passed, the passenger exited the car. He broke out a window of the shop, opened the window, and crawled inside the shop building. The driver did not move the vehicle; he "waited" until the passenger crawled inside the shop building and then "took off." The driver knew the passenger had entered the building, "because he watched him go in."

After entering the premises, the passenger repeatedly cracked open the shop door and peeped out. A short time later, the passenger ran from the shop carrying a bag containing unknown objects. Daniel, who was then standing on his front porch, observed the passenger run across a vacant lot and throw a pair of rubber gloves onto the ground.

The blue car did not return to the crime scene for 5-7 minutes; except for the blue car, no other cars drove past the shop after the passenger left the building. The blue car returned and was driven slowly by the crime scene while the driver was "looking in over there." Daniel could tell the driver was "looking for something at Earl Scheib's." Daniel wrote down the tag number of the vehicle and walked down the street to use a pay phone to call the police. As he was walking, the blue car circled and drove by Daniel again. By hap-

penstance, a police cruiser was stopped at a red light, so Daniel immediately informed the police of what he had observed. At this time, he also gave them the vehicle tag number and a description of the person driving the car. The police went to the body shop, saw a blue car matching the exact description given near the shop, stopped the vehicle, and arrested appellant who was driving. Daniel also testified as to the general description of the vehicle driver that he had given the police when he reported the incident.

After Daniel returned home, he noticed two or three police cars at the body shop. He voluntarily approached the crime scene and saw the blue car; at that time, he also recognized the man sitting on the side of the road as the vehicle driver. Daniel identified the car at the crime scene. He walked to the vacant lot with the police and showed them the rubber gloves which the passenger had thrown on the ground. At trial, Daniel testified he did not know appellant.

The arresting officer testified that after the crime was reported, he went to the scene and observed a "white male attempting to get into the vehicle." The man was placed under arrest. The arresting officer made an in-court identification of appellant as the man who was arrested at the crime scene entering the blue car with plastic on the driver's side. The detectives "found a glove, a surgical-type glove, [lying] over in a field" in the vicinity where the passenger had run; they brought it to the arresting officer. The arresting officer also discovered and observed bout 8-10 of "the same type surgical gloves" in the glove compartment of the car. The glove which the detective brought back "matched up with the gloves that were in the glove compartment"; "the gloves were identical."

Appellant testified denying any complicity in the burglary, and claiming that after a neighborhood acquaintance had helped him start his car, he agreed to take him to obtain some marijuana. Thereafter, the passenger told appellant he did not have anyone in the area who would sell to him, to let him out, and to come back in a few minutes and pick him up. Appellant pulled over by Earl Scheib's and let the passenger out; he did not see the passenger break and enter the Earl Scheib building, nor did he conspire in any way with the man to burglarize the building. Appellant rode around the block a couple times, but the passenger did not return. Appellant's car subsequently had mechanical trouble, and as he got out of the car and closed the door, the police arrived. *Held*:

1. Appellant asserts the trial court erred in admitting in evidence the photograph of the glove found in the field and the photograph of the gloves in the open glove compartment of appellant's car.

(a) Appellant objected when the State attempted to introduce a photograph of the glove found in the vacant lot; the actual glove was not produced at trial. The objection was on the specific ground that

"there is no foundation laid for who took these pictures and as to when they were taken and how they were taken."

"An objection on a specific ground [or grounds] at trial waives any objection to that evidence on other grounds on appeal." *Norman v. State*, 197 Ga. App. 333, 334 (2) (398 SE2d 395). Accordingly, all other grounds for objection, other than the specific foundation grounds posed at trial, are not preserved for appeal.

"A photograph is authenticated by showing it is a fair and accurate representation of the scene depicted. [Cit.] Any witness who is familiar with the scene depicted can authenticate the photograph; it is not necessary that the witness be the photographer or even that the witness have been present when the photograph was taken." *Isaacs v. State*, 259 Ga. 717, 732 (26) (386 SE2d 316). Although no witness uttered the magic words that the photograph of the glove found in the field was "a fair and accurate representation of the scene depicted," the record reveals that an adequate foundation was nevertheless established through the testimony of Daniel for the admission of this photograph. Daniel testified without objection that he personally led the detectives to the spot on the field where the glove was dropped; he recognized that the scene depicted in the photograph, State's Exhibit No. 4, was "the vacant lot with the rubber gloves [lying] there"; that the glove was lying (in the photograph) the same way the other one was lying — all wadded up; and that he was positive that the glove in the photograph was the glove that was there that night. We find this testimony at least substantially complies with the foundation requirement of *Isaacs*, supra, and that the trial court did not abuse its discretion in admitting this photograph in evidence (*Freeman v. State*, 196 Ga. App. 343, 344 (2) (396 SE2d 69)); see OCGA § 24-1-2 (rules of evidence framed with view to discover truth).

(b) The same "original objection" was made to the introduction of State's Exhibit No. 5, the photograph of the gloves in the open glove compartment of the vehicle. Likewise, all other objections were waived. *Norman*, supra. The arresting officer testified, without objection, that he had personally discovered and observed the same type of surgical gloves in the glove compartment of appellant's car; that he recognized "what's in that photograph," State's Exhibit No. 4; that he recognized what was depicted in the photograph, State's Exhibit No. 5; that the photograph showed "several surgical gloves inside the glove compartment of the vehicle that [he] observed at the scene"; that the gloves were "of a surgical type, and [he] did discover them when [he] opened the glove compartment of the vehicle"; that the gloves in the glove compartment matched the glove brought from the lot by the detectives — "in looking at one and looking at the other, they were perfectly matched"; and, although he did not know if the glove from the field came out of that particular glove compartment,

"the gloves were identical." The trial court did not abuse its discretion in admitting the photograph, State's Exhibit No. 5. *Isaacs*, supra; *Freeman*, supra.

(c) Assuming arguendo the trial court had failed to lay an adequate foundation for the admission of the photographs, the error would have been harmless. Both Daniel and the arresting officer were allowed to testify without objection to the significance of the scene depicted in each photograph. "All evidence is admitted as a matter of course unless a valid ground of objection is [timely] interposed." (Citations and punctuation omitted.) *Smarr v. State*, 199 Ga. App. 572, 573 (2) (405 SE2d 561). At most, the photographs would be only cumulative of the testimony of these two witnesses concerning the significance of the scene therein depicted. Evidence is harmless where admissible evidence of the same fact is before the jury. *Young v. State*, 191 Ga. App. 651, 653 (382 SE2d 642); see *Glass v. State*, 235 Ga. 17, 19 (218 SE2d 776).

2. Appellant enumerates as error the general grounds. Based on our holding in Division 1 above, we find the existence of no error of law necessitating case reversal.

Regarding the sufficiency of the evidence to sustain the burglary conviction, appellant asserts that as the evidence against appellant was circumstantial, the standard of review is that if this court finds that the proved facts did not exclude every other reasonable hypothesis save that of guilt of the accused then appellant's conviction must be reversed. See generally OCGA § 24-4-6. We disagree. The evidence is not wholly circumstantial in that there was introduced in evidence certain direct evidence from an eyewitness, Daniel. In cases such as this, the proper standard for appellate review is that of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Humphrey v. State*, 252 Ga. 525 (314 SE2d 436).

On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463 (1) (393 SE2d 737). Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the offense charged. *Jackson v. Virginia*, supra.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED OCTOBER 28, 1992.

*Gwyn P. Newsom*, for appellant.
*Douglas C. Pullen, District Attorney, Jerry G. Croley, Jr., Assis-*

*tant District Attorney*, for appellee.