## A98A1884. LONDON v. THE STATE.
(508 SE2d 247)

JOHNSON, Presiding Judge.

London was convicted of one count each of armed robbery, hijacking of a motor vehicle, possessing a vehicle with altered identification, and carrying a concealed weapon and two counts each of using a license plate to conceal the identity of a vehicle, theft by taking of a motor vehicle, and theft by receiving stolen property. He appeals.

London asserts that the evidence was insufficient to support his

convictions of armed robbery, hijacking, carrying a concealed weapon and one count of theft by receiving stolen property.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. [Cit.]" *Russell v. State*, 230 Ga. App. 546, 549 (4) (497 SE2d 36) (1998). The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), "is the proper test for us to use when the sufficiency of the evidence is challenged." *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

1. The evidence is sufficient to support London's conviction of armed robbery, hijacking, and theft by taking an automobile. The state is entitled to assert alternative theories of criminality to a jury. At trial, the state advanced two theories to establish London's criminality as to these offenses. The state argued that London was guilty of these offenses either as the perpetrator or as a party to the crimes. See generally OCGA § 16-2-20; see also *Walthour v. State*, 269 Ga. 396, 398 (3) (497 SE2d 799) (1998). The record contains the following evidence regarding these two theories:

(a) *London as the perpetrator*: On January 20, 1997, Kenneth Wilkins drove his employer's 1997 Cadillac to his apartment. As he got out of the car, Wilkins was approached by a man who was wearing a green army overcoat with the hood up, blue jeans, and a blue bandanna across the lower portion of his face. The assailant pointed a chrome-plated handgun at Wilkins, cocked the hammer, and told Wilkins to give him the car keys or he would "bust a cap in [Wilkins'] ass." Wilkins gave the assailant the car keys. The assailant first forced Wilkins to lie down on the ground and then told Wilkins to stand up because he was taking Wilkins with him. Wilkins stood up and ran away. The assailant drove off with the car.

In the early morning of January 21, 1997, London drove the stolen Cadillac to a hotel where his friend, Rosalyn Smith, was staying. He told Smith that he had bought the car that afternoon. Based on a citizen's report, London was apprehended nine days after the robbery while driving the stolen Cadillac. The car had an Alabama temporary tag. London told the police that he purchased the Cadillac from an Alabama car dealer named Dave Thomas. He produced two different handwritten bills of sale; one was for $19,000, and the other was for $27,000. London claimed a woman loaned him the money to purchase the vehicle and that two bills of sale had been prepared so his friend could avoid tax problems. He would not identify the woman.

At trial, Wilkins testified without objection that he had heard his assailant's voice during the incident and that a police detective subsequently played a tape for him which was a recording of a similar

male voice. The state, however, has not provided any page citation to the record where it was established that London's voice was on the tape. Wilkins also testified that the handgun, found in London's apartment and introduced into evidence by the state, was similar to the gun which the assailant pointed at him during the robbery. Wilkins has never been able to identify London as his assailant. At trial, London modified his prior statement to the police by claiming that he had purchased the car from Dave Thomas, who he now asserts was a friend of Rosalyn Smith. Thomas has never been located.

(b) *London as a party to the crime*: The state introduced the following evidence to show that if London was not the perpetrator, he was at least a party to the crime. In December 1996, London asked M. S., a teenager, to introduce him to some of M. S.'s friends. London said he would pay them money to steal cars for him and that he would take the cars to a chop shop. M. S. told three of his friends, J. J. B., R. C. and M. H., about London's offer. Approximately two days after the robbery, Shavonna Smith, a friend of London's, saw two teenage boys come to London's apartment with the stolen Cadillac. One of the boys was named Jerrod. He had a gun which he showed London. Smith heard London ask the boys if they had to use a gun and informed them they would be paid the next day. She saw one of the boys remove the license plate from the Cadillac and replace it with an Alabama plate from a Lincoln Town Car. London threw the Cadillac's license plate into a creek behind his apartment; the police later recovered it. J. J. B. denied that he or R. C. had stolen the Cadillac. J. J. B. admitted, however, that he was at London's apartment and that London had asked him and R. C. if they knew anyone who would steal cars.

(c) *As to the charges of armed robbery, hijacking and theft by taking of the Cadillac*: When London was arrested nine days after the crime, he was in possession of the stolen Cadillac. Where a theft, whether committed by simple larceny, burglary, or robbery, is proven, the recent unexplained or inadequately explained possession of the stolen property by the defendant creates an inference or presumption of fact sufficient to convict. *Williams v. State*, 205 Ga. App. 397 (1) (422 SE2d 438) (1992). Whether or not a defendant's explanation is satisfactory or reasonable is a question for the jury. Id.

Utilizing the reasonable doubt standard of *Jackson v. Virginia*, supra, the evidence was sufficient to support London's conviction of armed robbery, hijacking and theft by taking of the Cadillac. London's unexplained or inadequately explained recent possession of the stolen Cadillac, coupled with all of the other circumstances as shown by a totality of the evidence, supported his conviction of these three charges either as a perpetrator or as a party to the crime under the *Jackson v. Virginia* standard. See *Rogers v. State*, 185 Ga. App.

211, 212 (1) (363 SE2d 846) (1987).

2. London was convicted of theft by receiving a stolen Mossburg rifle and a Remington shotgun, the property of Dean Courson (Count 9 of the indictment). Applying the reasonable doubt standard of *Jackson v. Virginia*, supra, we find that the evidence was insufficient to support his conviction.

While the identity of the thief has not been established, the fact that someone other than the accused stole the property can be established by circumstantial evidence. See *Thomas v. State*, 218 Ga. App. 371, 373 (461 SE2d 305) (1995). However, there is insufficient evidence that London was in possession of and was exercising control over these stolen guns. Compare *Owens v. State*, 192 Ga. App. 335, 340 (1) (b) (384 SE2d 920) (1989). The evidence shows that a Mossburg rifle and a Remington shotgun were stolen by an unknown party from Dean Courson's truck on November 8, 1996. These guns were found during a search of London's apartment on January 29, 1997. The rifle was found in an entryway closet, and the shotgun was found in one of the bedrooms.[1] At the time of the search, however, London was not living in the apartment. He had moved and had allowed Rosalyn Smith to live in his apartment. Prior to moving, London had a roommate, Davis, who also lived in the apartment. Davis' identification was found in one of the bedrooms. Rosalyn Smith testified that the guns were present in the apartment when she moved there, but she could not testify as to who had stolen the guns or whether London had ever exercised control over them. Several other guns also were found during the search. Considering the lack of direct evidence as to London's possession or control over the weapons and the number of people who had equal access to the places in the apartment where the guns ultimately were found, we cannot conclude that the state carried its burden under a *Jackson v. Virginia* standard.

3. London was convicted of carrying a concealed pistol. The evidence was sufficient to support this conviction. On the day of London's arrest, a police officer stopped the Cadillac which London was driving for a traffic violation. London began to reach under the driver's seat. With London's consent, the officer searched the car and found a loaded Glock pistol beneath the seat.

OCGA § 16-11-126 (a) makes the carrying of a concealed weapon a criminal offense. OCGA § 16-11-126 (d) provides in pertinent part

---

[1] The state asserts in its brief that one of the firearms was found in the master bedroom closet of the apartment and that Davis' identification was found in the other bedroom closet. The record, however, merely establishes that the shotgun was found in one of the bedroom closets. We cannot consider assertions of fact unsupported by the record on appeal. *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 846 (1) (366 SE2d 223) (1988).

that "[t]his Code section shall not forbid any person who is not among those enumerated as ineligible for a license under Code Section 16-11-129 from transporting a loaded firearm in any private passenger motor vehicle in an open manner and fully exposed to view or in the glove compartment, console, or similar compartment of the vehicle; provided, however, that any person in possession of a valid permit issued pursuant to Code Section 16-11-129 may carry a handgun in any location in a motor vehicle."

The record does not establish that London had a valid permit which would have authorized him to carry the handgun anywhere within the motor vehicle. London had the burden of proving that he had such a permit. See *Patterson v. State*, 196 Ga. App. 754, 755 (397 SE2d 38) (1990). The pistol was not "fully exposed to view or in the glove compartment," within the meaning of OCGA § 16-11-126 (d), and was within London's reach under the car seat. Thus, there was evidence showing that he carried a concealed weapon in violation of OCGA § 16-11-126 (a). See *Parrish v. State*, 228 Ga. App. 177 (491 SE2d 433) (1997).

4. In view of our holding in Division 2, we need not address London's enumeration that the trial court erred in sentencing him to serve ten years on Count 9.

5. London contends that the state repeatedly and erroneously placed his character in issue. His brief lists occasions when this allegedly occurred, but states the list is not all inclusive.

Except in one instance, London did not object to any of the questions or testimony which he now asserts as error. Thus, because no timely objection was made at trial, these issues are not preserved on appeal. See *Lawton v. State*, 259 Ga. 855, 856 (2) (388 SE2d 691) (1990).

As to the remaining issue, London asserts it was error to allow the arresting officer to testify that he made a radio call reporting that he was driving to the homicide office. Upon hearing the call made, London spontaneously stated, "You don't think I am a killer? I'm not a killer." He repeated this statement at the homicide office. Although London objected to the officer's testimony about London's voluntary statements, he did not object to the contents of the radio call itself. Further, the grounds for his objections were not based on a claim that his character was placed in issue. Thus, this issue also was not preserved on appeal. See id.; *Frymyer v. State*, 179 Ga. App. 391, 393 (3) (346 SE2d 573) (1986). Assuming it had been preserved, any error would have been harmless as it was substantially similar to other facts already admitted, without objection, to the jury. See *Scott v. State*, 206 Ga. App. 23, 26 (1) (c) (424 SE2d 328) (1992).

Any other instance where London's character allegedly has been placed in issue and which is not appropriately identified in London's

brief will not be considered on appeal. We may not cull the record in search of error on behalf of either the state or the defendant. *Talley v. State*, 200 Ga. App. 442, 446 (4) (408 SE2d 463) (1991).

6. Although not enumerated as error, London asserts in his brief that the record is silent as to whether the state gave notice of and conducted a hearing regarding similar transaction evidence, as required by Uniform Superior Court Rules 31.2 and 31.3. This issue was not enumerated as error and is not preserved on appeal. *Krebsbach v. State*, 209 Ga. App. 474, 475 (2) (433 SE2d 649) (1993).

7. The trial court did not err in failing to give a limiting instruction as to similar transaction evidence since London made no request for such an instruction. *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998).

8. Because there was some evidence that London was a party to the crimes of armed robbery, hijacking, and theft by taking an automobile, see Division 1, the trial court did not err in charging the jury as to parties to a crime. See *Payne v. State*, 219 Ga. App. 318 (1) (a) (464 SE2d 884) (1995).

Based on the foregoing, the judgment of conviction is affirmed as to all charges except Count 9, receiving stolen property, which is not supported by sufficient evidence of record. The case is remanded to the trial court to have the conviction and sentence as to Count 9 expunged from London's record.

*Judgment affirmed in part and reversed in part and case remanded with direction. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 29, 1998.

*Nicholas Pagano*, for appellant.
*Benjamin F. Smith, Jr.*, District Attorney, *Debra H. Bernes, Nancy I. Jordan*, Assistant District Attorneys, for appellee.