**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**May 3, 2012**

# In the Court of Appeals of Georgia

A12A0501. PEPPERS v. THE STATE.                          BO-020C

BOGGS, Judge.

A jury found Ora Peppers guilty on two counts of possession of a firearm by a convicted felon, but acquitted him on charges of aggravated cruelty to animals and discharge of a gun near a highway. Following the denial of his motion for new trial, Peppers appeals, asserting only that the evidence is insufficient to sustain his convictions. We find the evidence sufficient on one count of possession of a firearm by a convicted felon, but insufficient on the second count. We therefore affirm in part and reverse in part, and remand this case for resentencing.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and the defendant no longer enjoys a presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). An

appellate court does not weigh the evidence or determine witness credibility but only determines whether, under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Id.

So viewed, the evidence showed that police officers responded to a call that someone shot a dog in front of a child. When officers investigated the matter, they made contact with Peppers, who was standing on his front porch. An officer asked Peppers if he "had any weapons in the house," to which Peppers responded "yes," and allowed officers to enter his home. Once inside the home, Peppers picked up a .22-caliber rifle "on his left-hand side in the corner of the hallway kind of living room area . . . two to three feet within the residence as [officers] first made entry into the house." Peppers handed the rifle to one of the officers.

Officers then asked Peppers "if there were any other weapons in the house." Peppers first replied that "there wasn't," but shortly thereafter told officers that there was a shotgun in the house. One of the officers testified that Peppers led them through the house into a back bedroom on the left side of the home where he showed officers "where the shotgun was, at which time [the officer] didn't let him handle that weapon.

2

[The officer] took possession of it." An officer testified that Peppers did not indicate "whose bedroom it was[,]" that there was an older woman in the house, and that he did not "recall ever discussing whose weapons they were."

Peppers testified that he "didn't have a gun but [his roommate] had one." He explained that to cooperate with police, he retrieved his roommate's guns. Peppers stated further that when officers asked about weapons, he asked his roommate if he could show them to police and the roommate responded that it was "all right" to do so. He explained that the weapons were on his roommate's side of the home, and that although he could access her side of the home, he did not do so. Peppers explained further that he shared the living room with his roommate "and that's all."

Peppers' roommate testified that the rifle and shotgun belonged to her and that she kept them in her bedroom "between [her] bookcase and [her] bathroom." She explained that Peppers "never touched [her] guns." The roommate stated further that when she heard Peppers tell the officers that he did not have any weapons, she retrieved two weapons she owned from her bedroom and put them by the front door, and that Peppers asked her if he could hand the guns to the officers. She explained that she and Peppers had separate bedrooms but that they "share the - - all the kitchen and stuff and the bathroom . . . [w]e split our rent and we split our bills."

3

A witness testified that on the day of the incident, she "heard a gun go off," and when she turned, she saw Peppers holding a gun that looked like the .22-caliber rifle that officers retrieved from Peppers' home.

Peppers was charged with two counts of possession of a firearm by a convicted felon based upon his prior felony convictions and his possession of a rifle and a shotgun. A jury found him guilty on both counts.

Peppers argues that he did not have the power and intention to exercise dominion and control over his roommate's firearms that were kept in her bedroom. OCGA § 16-11-131 (b) provides that "[a]ny person . . who has been convicted of a felony by a court of this state or any other state . . . receives, possesses, or transports any firearm commits a felony." Possession can be actual or constructive. *Layne v. State*, ___ Ga. App. ___ slip op. at 10 (2) (Case No. A11A2049; decided January 18, 2012). It is undisputed that Peppers had been previously convicted of the felonies of burglary and arson in the first degree. And a witness testified that immediately after hearing a gunshot, she saw Peppers holding a gun similar to the .22-caliber rifle Peppers handed to officers just inside the front door to his home. The evidence was therefore sufficient to support Peppers' conviction for possession of a rifle by a convicted felon. See *Deering v. State*, 244 Ga. App. 30, 32 (2) (535 SE2d 4) (2000)

4

(person in direct physical control of thing at a given time is in actual possession of it).

But we must reverse Peppers' conviction for possession of a firearm by a convicted felon based upon his alleged possession of the shotgun. While Peppers knew the location of the shotgun, there was no evidence presented that he had actual possession of it outside of possibly handing it to officers at their request, nor is there evidence that Peppers was in constructive possession of the shotgun. "A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. Constructive possession is sufficient to prove possession of a firearm by a convicted felon." (Citations and punctuation omitted.) Id. The evidence here showed two possible scenarios: (1) that Peppers asked his roommate for permission to take officers to her room to retrieve the shotgun, and led officers to the roommate's bedroom where they retrieved it; or (2) Peppers handed the officers the shotgun that his roommate had placed by the door after hearing officers ask if there were guns in the home. Neither of these circumstances is sufficient to show that Peppers actually possessed or exercised sufficient dominion and control over the shotgun to establish constructive possession. See *Peterson v. State*, 252 Ga. App. 469, 471-472 (2) (556

5

SE2d 514) (2001) (evidence insufficient where firearms were found in shoe boxes in bedroom closet, and although photographs and paperwork bearing defendant's name were found, there was no evidence that defendant leased or resided in apartment or had personal items or clothing there); compare *Layne*, supra (evidence that two firearms and ammunition for a third were found in defendant's padlocked bedroom sufficient to show constructive possession); *Deering*, supra, 244 Ga. App. at 33 (2) (evidence of constructive possession where defendant was sole occupant of vehicle and gun was cocked, loaded, and between front seats of car within his reach); *Crawford v. State*, 233 Ga. App. 323, 324 (1) (b) (504 SE2d 19) (1998) ("A jury is authorized to find constructive possession of a firearm by one occupant of a shared bedroom when the firearm is found in a dresser drawer containing clothing appropriate to that occupant's sex.[Cit.]").

*Judgment affirmed in part, reversed in part, sentence vacated and case remanded for resentencing. Doyle, P. J. and Andrews, J., concur.*