**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**December 17, 2021**

# In the Court of Appeals of Georgia

A21A1230. LEE v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury, Dustin Lee was convicted of possessing a firearm as a convicted felon. Lee now appeals from this conviction, arguing that (1) the evidence was insufficient to sustain it, (2) the trial court made a series of plain errors, (3) the State was improperly permitted to misstate the law during its closing argument, and (4) the combined prejudicial effect of the errors requires a new trial. Because we agree that the State failed to present sufficient evidence to sustain Lee's conviction, we reverse.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of

innocence.[1] And we do not weigh the evidence or determine witness credibility, but only determine whether—under the standard of *Jackson v. Virginia*[2]—the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.[3]

So viewed,[4] the record shows that in August 2016, an anonymous citizen contacted Jason McCoy—the chief of police for the City of Soperton—in reference to an online comment about "bad" law enforcement officers needing to be "shot," which was made by Lee's Facebook account.[5] McCoy then viewed several images

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[2] 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] *Id.*; *see Murray v. State*, 309 Ga. App. 828, 830 (711 SE2d 387) (2011) ("The test for sufficiency is whether any rational trier of fact could have found the central elements of the crime beyond a reasonable doubt.").

[4] The State's statement of facts only notes that it "explicitly does not endorse or agree to [Lee's] statement of facts" and "asks this Court to rely on the record of the trial itself, as it is the only evidence available on the matters raised in [Lee's] motion." Suffice it to say, this does not comply with Georgia Court of Appeals Rule 25 (b) (2), which requires the appellee to "point out any material inaccuracy or incompleteness of appellant's statement of facts" and include "any additional statement of facts deemed necessary, plus citations to additional parts of the record or transcript deemed material."

[5] This statement was not admitted into evidence, but McCoy read it to the jury: "There's bad police, too, that need shot. They just hide behind their badges. FTP." McCoy explained to the jury that he understood "FTP" to mean "f*ck the police."

2

from Lee's account (which was public) and noticed a photograph of Lee holding a firearm, though he could not tell when the image was posted or taken. McCoy suspected that Lee was a convicted felon, confirmed this was true "through a GCIC check," and then eventually located Lee at his girlfriend's residence where he lived part time.

When officers arrived at the girlfriend's residence on August 14, 2016, Lee exited the home onto the front porch and was immediately arrested for terroristic threats based on his Facebook comments. Lee was then handcuffed and placed in the back of a patrol car while McCoy and other officers searched the girlfriend's home for a gun. Before doing so, McCoy asked Lee's girlfriend—based on the images uploaded to Lee's Facebook account—if there were any guns in the home. She responded that there was a gun inside, and she instructed her young son to retrieve it. The girlfriend advised McCoy that the gun was in a bedroom, but when the two reached the bedroom, she could not find the weapon.[6] Then, upon exiting the bedroom, they saw the gun—a .22 caliber rifle—propped against a wall in the main living area of the home. McCoy then took the rifle into evidence.

---

[6] Despite looking for the gun in the bedroom, the girlfriend later testified that she normally kept it in the laundry room.

3

Lee was then read his *Miranda* rights, and he proceeded to voluntarily speak with McCoy,[7] saying that he acquired the rifle for his girlfriend's son and did so by trading a small dirt bike. His girlfriend confirmed that the gun was acquired from Lee's family, and that her oldest son used it as a hunting rifle. She also testified that Lee did not personally go to pick up the gun from his family, but rather she and her son did.

Lee was thereafter indicted for possessing a firearm as a convicted felon in that "on the 14th day of August, 2016, [he] did unlawfully, having been convicted on the 31st day of October, 2013, . . . of theft by receiving, a felony . . . , receive, possess and transport a firearm." Lee was subsequently found guilty of this offense, and this appeal follows the denial of his motion for new trial.

1. For starters, Lee argues that the State did not present sufficient evidence that he actually or constructively possessed the firearm.[8] We agree.

---

[7] The trial court determined—after conducting a *Jackson-Denno* hearing—that Lee knowingly and voluntarily gave his statement to law enforcement.

[8] Lee does not dispute that he is a convicted felon. For its part, the State addresses Lee's sufficiency argument with only a short paragraph that fails to cite any legal authority.

4

Under Georgia law, "[a]ny person . . . who has been convicted of a felony by a court of this state or any other state . . . who receives, possesses, or transports any firearm commits a felony . . . ."[9] And possession of a firearm can be either actual or constructive.[10] A person constructively possesses an item when, "though not in actual possession, [he] knowingly has both the power and the intention at a given time to exercise dominion or control" over the item.[11] Finally, though constructive possession may be shown by circumstantial evidence, as with any charge based on purely circumstantial evidence, in order to support a conviction, "the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant."[12]

---

[9] OCGA § 16-11-131 (b).

[10] *Peppers v. State*, 315 Ga. App. 770, 771 (728 SE2d 286) (2012); *Layne v. State*, 313 Ga. App. 608, 612 (2) (722 SE2d 351) (2012).

[11] *Peppers*, 315 Ga. App. at 772; *see Murray*, 309 Ga. App. at 830 ("Constructive possession exists where a person[,] though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, and it must be based upon some connection between the defendant and the contraband other than spatial proximity." (punctuation omitted)).

[12] *Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017) (punctuation omitted); *see Hunt v. State*, 358 Ga. App. 897, 900 (856 SE2d 467) (2021) ("We recognize that constructive possession can be shown through circumstantial evidence. But where, as here, the State relies wholly on circumstantial evidence to establish possession, the proved facts must 'exclude every other reasonable hypothesis save that of the guilt of the accused.'" (citation omitted)).

5

Here, there is no evidence Lee actually or constructively possessed the .22 caliber rifle at issue. The Facebook photos of Lee allegedly holding a firearm were *not* admitted into evidence, and McCoy testified that he could not say when the photographs were taken or posted—*i.e.*, he did not know if they depicted Lee possessing a firearm *prior* to or *after* his felony conviction. As a result, the jury could not infer from McCoy's testimony regarding these photographs that Lee actually or constructively possessed a firearm as a convicted felon.[13] Additionally, the rifle was spotted in the main living area of the home *after* McCoy and Lee's girlfriend traveled through the same area to reach the bedroom, where she could not locate the firearm; and before going back inside the home, Lee's girlfriend asked her son to retrieve the firearm. It is reasonable to conclude, then, that the son retrieved the gun while the girlfriend and McCoy were looking for it in the bedroom (though she testified the gun was typically kept in the laundry room), during which time Lee was already handcuffed and sitting outside in a patrol car. And as for Lee's so-called confession, McCoy merely testified that Lee said he acquired the firearm for his girlfriend's son by trading a dirt bike for it. McCoy did *not* say Lee confessed to transporting the gun.

[13] *See* OCGA § 24-14-9 ("In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved.").

Similarly, Lee's girlfriend testified that Lee facilitated the acquisition of the firearm (which belonged to and was used by her son), but she was the one to pick it up.

As a result, even viewing the foregoing in the light most favorable to the jury's verdict, there is no evidence that Lee actually or constructively possessed the firearm so as to sustain a conviction for possession of a firearm as a convicted felon. Indeed, a finding of constructive possession "must be based upon some connection between the defendant and the contraband other than spatial proximity," and evidence of "mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction."[14] The most that

---

[14] *Mantooth v. State*, 335 Ga. App. 734, 735 (1) (a) (783 SE2d 133) (2016) (punctuation omitted), *disapproved of on other grounds by Hill v. State*, 360 Ga. App. 143 (860 SE2d 893) (2021); *see Harvey v. State*, 344 Ga. App. 7, 12-13 (2) (b) (806 SE2d 302) (2017) ("Merely finding contraband on premises occupied by the defendant does not support a conviction if the evidence shows that persons other than the defendant had equal opportunity to commit the crime. Likewise, mere spatial proximity between the defendant and the contraband will not support a finding of constructive possession." (punctuation omitted)), *disapproved of on other grounds by Hill v. State*, 360 Ga. App. 143 (860 SE2d 893) (2021). *Cf. Thurmond v. State*, 304 Ga. App. 587, 591 (2) (696 SE2d 516) (2010) ("[E]vidence other than [the defendant's] spatial proximity to the cocaine allowed a finding that he had constructive possession over it. The driver of the car in which the cocaine was found denied that the cocaine was hers. She stated that it was thrown to the floorboard under her feet by [the defendant]. Moreover, she stated that she met [the defendant] to discuss the purchase of an '8-ball' of cocaine, which the officer testified was consistent with the packaging of the cocaine found in the car.").

the evidence shows here is that Lee stayed at his girlfriend's home part-time; had previously arranged for her son to acquire a rifle; Lee's girlfriend transported the rifle to her home; the rifle was generally kept in the laundry room; the rifle was used by and belonged to the girlfriend's son; and the rifle was located and appeared in the common living area on the day in question while Lee was already handcuffed and sitting in a patrol car, *after* the girlfriend told her son to retrieve it. There was no testimony as to *where* in the bedroom the girlfriend and McCoy looked for the gun (*e.g.*, under the bed, in the closet), nor was there testimony as to whether Lee shared his girlfriend's bedroom while living there part-time.[15] And there was no testimony as to whether Lee knew where the gun was kept—be it the girlfriend's bedroom or the laundry room.[16] Thus, Lee's spatial proximity to a firearm within his girlfriend's home was insufficient to establish that he actually or constructively possessed the

---

[15] *Cf. Carter v. State*, 319 Ga. App. 609, 612-13 (2) 737 SE2d 714) (2013) ("[The defendant] also knew that there was a gun in the apartment, and police found it in [the defendant's] closet along with a shoe box containing marijuana. This evidence was sufficient for the trial court to conclude that [the defendant] had the power and intention to exercise control over the gun.").

[16] *Cf. id.* at 613 ("Although [the defendant] claimed he did not know the gun was in his laundry hamper, [the defendant's] credibility on this issue was for the factfinder to determine." (citation omitted)).

rifle.[17] There was, then, no evidence that Lee "knowingly [had] both the *power* and

the *intention* at a given time to exercise dominion or control"[18] over the firearm, and

[17] *See Peppers*, 315 Ga. App. at 772 ("The evidence here showed two possible scenarios: (1) that [the defendant] asked his roommate for permission to take officers to her room to retrieve the shotgun, and led officers to the roommate's bedroom where they retrieved it; or (2) [the defendant] handed the officers the shotgun that his roommate had placed by the door after hearing officers ask if there were guns in the home. Neither of these circumstances is sufficient to show that [defendant] actually possessed or exercised sufficient dominion and control over the shotgun to establish constructive possession."); *Peterson v. State*, 252 Ga. App. 469, 471 (2) (556 SE2d 514) (2001) ("[T]he only evidence linking [the defendant] to the guns, other than his proximity to them, was the discovery at the apartment where the guns were found of paperwork bearing his name and photographs depicting him. This circumstantial evidence did not exclude the possibility that the guns belonged to the others present in the apartment—the woman found in the bedroom or the man in the dining room. Accordingly, the conviction of possession of a firearm must be reversed." (footnote omitted)). *Cf. Layne*, 313 Ga. App. at 613 (2) ("[T]he evidence shows that [the defendant's] bedroom contained two firearms and ammunition for a third gun that was found in a spare bedroom. Additionally, a shed used by [the defendant] also contained ammunition for the guns in question. This evidence was sufficient to show that [the defendant] constructively possessed three firearms as a convicted felon.").

[18] *Peppers*, 315 Ga. App. at 772 (emphasis supplied); *see Murray*, 309 Ga. App. at 830 ("Constructive possession exists where a person[,] though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, and it must be based upon some connection between the defendant and the contraband other than spatial proximity." (punctuation omitted)). *Cf. Lebis*, 302 Ga. at 753-56 (II) (A) (holding that evidence beyond mere spatial proximity established that wife constructively possessed firearms when there was circumstantial evidence showing she occupied a small hotel room with her husband in preparation to resist his arrest, their belongings were intermixed within the room, photographs showed the close proximity in which the couple lived, photographs showed weapons highly visible throughout the room, wife implausibly

thus, the evidence presented by the State was not sufficient for the jury to find *beyond a reasonable doubt* that Lee possessed a firearm as a convicted felon.[19]

2. Given our holding in Division 1, we need not address Lee's remaining enumerations that the trial court made a series of plain errors, the State was improperly permitted to misstate the law during closing argument, and the combined prejudicial effect of the errors requires a new trial.

---

denied knowing the weapons were in the room but also told officers she knew her husband kept a weapon on his person, she knew her husband owned guns, and she previously attempted to conceal weapons within her home because her husband was a convicted felon who could not possess firearms).

[19] *See London v. State*, 235 Ga. App. 30, 33 (2) (508 SE2d 247) (1998) ("Considering the lack of direct evidence as to [the defendant's] possession or control over the weapons and the number of people who had equal access to the places in the apartment where the guns ultimately were found, we cannot conclude that the state carried its burden under a *Jackson v. Virginia* standard."). *Cf. Parramore v. State*, 277 Ga. App. 372, 373-74 (626 SE2d 567) (2006) ("[The defendant] does not dispute his prior felony conviction, and the following evidence was sufficient to establish that [he] had constructive possession of the weapon: (1) [deputies] testified that [he] had stated that he was living at his mother's house and staying in the back bedroom; (2) [he] told the deputies that he used the gun for hunting; (3) [he] told the deputies that the gun could be located in that bedroom; (4) the deputies actually found the gun in the back bedroom; (5) [his mother] testified that prior to the trial, [he] had been staying in the same room that the gun had been found; and (6) [he] indicated on the bond certification that his address was [his mother's address].").

For all these reasons, we reverse Lee's conviction.

*Judgment reversed. Mercier and Pinson, JJ., concur.*