**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**April 25, 2012**

# In the Court of Appeals of Georgia

A12A0184. HOLMES v. THE STATE.

DILLARD, Judge.

Following a bench trial, Kelvin L. Holmes was convicted of seven counts of forgery in the first degree. Holmes appeals his convictions and the denial of his motion for new trial, arguing that the trial court erred in admitting evidence that constituted hearsay and violated his right to confrontation under the Sixth Amendment to the United States Constitution, and that the evidence was insufficient to support his convictions. For the reasons set forth *infra*, we agree and thus reverse Holmes's convictions.

Viewed in the light most favorable to the trial court's guilty verdict,[1] the evidence shows that on September 19, 2007, Holmes opened a savings account at

---

[1] *See, e.g.*, *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009).

River City Bank in Rome, Georgia, using three U.S. Postal Service money orders for his initial deposit. Each of the three money orders indicated that it had been sent by a person named Dale Henderson and was payable to Holmes in the amount of $930. On September 21, 2007, two days after opening the account, Holmes withdrew $2,400, and five days later, he withdrew another $290, leaving the account with a balance of $100.

One week later, on September 28, 2007, Holmes presented four more U.S. Postal Service money orders for deposit into the account. The money orders were, once again, each made out to Holmes in the amount of $930, but this time all four orders indicated that a person named Casa (the first name was illegible) was the payor. Holmes deposited all but $200 from the money orders, but a few days later, he returned to the bank and withdrew $3,000, leaving a balance of $620 in the account.

Shortly thereafter, River City Bank received notice that the first three money orders were fraudulent, and the instruments were, in fact, returned unpaid. Concerned by this development, the bank began making inquiries regarding the four more recently deposited money orders and learned that those similarly could not be authenticated. Subsequently, those money orders were also returned unpaid. At that point, a representative from River City Bank contacted Holmes and informed him that

the money orders could not be authenticated. The bank representative also told

Holmes that he and Holmes needed to have a further discussion regarding what to do

about Holmes's now-overdrawn account. And although Holmes agreed, no further

discussions occurred.

Thereafter, Holmes was charged, via accusation, with seven counts of forgery

in the first degree,[2] with each count pertaining to one of the seven U.S. Postal Service

money orders. He opted for a bench trial, which was held on May 24, 2010. During

Holmes's trial, a customer-service representative for River City Bank testified about

assisting Holmes in opening his account and about Holmes's failure to return his

telephone calls after he informed Holmes that the money orders had been deemed

fraudulent. In addition, the chief financial officer ("CFO") of the bank testified

regarding the process by which the bank redeems money orders. Specifically, the

CFO explained that after a money order is deposited, the bank transmits an image of

the money order to the Federal Reserve Bank, which in turn transmits the image to

the bank upon which the money order is to be drawn. That bank then either honors

the money order or returns it with certain markings to indicate the status of the

transaction. The CFO further testified that in this case, the bank received returned

---

[2] *See* OCGA § 16-9-1 (a).

3

images of the money orders, which were stamped "Apparent Counterfeit Postal Money Order Not Eligible For Late Claim or Re-Clear," and that Holmes's money orders were not honored.

Following the testimony of the State's witnesses, the State moved to admit the money orders into evidence, including the copies of the money orders that bore the "Apparent Counterfeit" stamp. Holmes objected on the grounds that the stamped money orders constituted hearsay and violated his right to confrontation under the Sixth Amendment to the United States Constitution,[3] however, the trial court disagreed and denied the objection.

After the State presented its case, Holmes testified in his own defense and claimed he did not know that the money orders were fraudulent. He testified that he received an unsolicited job offer via an email from a person he did not know. The alleged job entailed receiving money orders in a Federal Express packet, depositing those money orders into a bank account, and then forwarding the money to another person after deducting ten percent of the total amount for himself. Holmes presented a copy of one of the emails as evidence, and claimed that he had been duped and had not intended to commit fraud. Nevertheless, at the conclusion of Holmes's trial, the

---

[3] U.S. CONST. amend VI.

4

trial court found him guilty on all seven counts of forgery in the first degree. Subsequently, Holmes filed a motion for new trial, which the trial court denied after holding a hearing on the matter. This appeal follows.

1. Holmes contends that the trial court erred in admitting into evidence the U.S. Postal Service money orders, which bore the "Apparent Counterfeit" stamp, arguing that such evidence constituted hearsay and violated his right to confrontation under the Sixth Amendment to the United States Constitution. We agree that the stamped money orders constituted inadmissible hearsay.

We note that "[a]s a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[4] In this case, as previously noted, the bank's CFO testified regarding the process by which the bank transmits money orders to the Federal Reserve and, eventually, the originating payor, and how the payor either honors the money order or stamps its reasons for not honoring it on the money order itself. Afterward, when the State tendered the stamped money orders, Holmes objected, arguing that the documents were hearsay and violated his

---

[4] *Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449) (2010) (punctuation omitted).

Confrontation Clause rights. But the trial court denied Holmes's objection, agreeing with the State that the stamped money orders were admissible under the business records exception to the hearsay rule.[5] In doing so, the trial court erred.

It is well settled that "those portions of business records which contain conclusions, opinions, estimates and impressions of third parties who are not before the court are not admissible under the business records exception to the hearsay rule."[6] And, the bank CFO's testimony indicated that the determination that the money orders deposited and cashed by Holmes were counterfeit was a conclusion or opinion made by a third party institution, whose representatives did not testify at trial. Accordingly, the money orders stamped "Apparent Counterfeit" should not have been

[5] *See* OCGA § 24-3-14 (b) ("Any writing or record . . . made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of the act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make the memorandum or record at the time of the act, transaction, occurrence, or event or within a reasonable time thereafter.").

[6] *Malcolm v. State*, 263 Ga. 369, 370 (3) (434 SE2d 479) (1993) (punctuation omitted).

6

admissible as a business record to prove that the money orders were, in fact, counterfeit,[7] and the trial court erred in allowing them into evidence.[8]

2. Holmes further contends that the evidence was insufficient to support his convictions, arguing that without the stamped money orders, the State could not prove that the money orders were counterfeit. We agree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[9] And in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[10] Accordingly, the trier of fact's guilty

---

[7] *See Miller v. State*, 266 Ga. 850, 854 (3) (472 SE2d 74) (1996) (holding that copy of drug analysis report would not be admissible as a business record because it contained the conclusion of a third party not before the court); *Malcolm*, 263 Ga. at 370-71 (3) (same).

[8] Given our finding that the stamped money orders constitute inadmissible hearsay, we need not address whether those documents are "testimonial" for Confrontation Clause purposes pursuant to *Bullcoming v. New Mexico*, ___ U.S. ___ (131 SCt 2705, 180 LE2d 610) (2011).

[9] *Joiner*, 299 Ga. App. at 300.

[10] *Id.*

verdict will be upheld "as long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[11]

Addressing Holmes's sufficiency challenge, we note that OCGA § 16-9-1 (a) provides in pertinent part that

> [a] person commits the offense of forgery in the first degree when with intent to defraud he knowingly makes, alters, or possesses any writing in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person . . . or by authority of one who did not give such authority and utters or delivers such writing.

And here, each forgery count of the accusation charged that Holmes did

> with intent to defraud, knowingly make, alter, and possess a certain writing to-wit: COUNTERFEIT UNITED STATES POST OFFICE MONEY ORDER . . . in a fictitious name in such a manner that the writing as made and altered purports to have been made by another person . . . by authority of one who did not give such authority and did utter said writing . . . ."

Thus, the State contended that Holmes lacked authority from either the U.S. Post Office or the alleged payors of the money orders to possess and utter the money orders because they were counterfeit. However, the only evidence introduced at trial

---

[11] *Nassau v. State*, 311 Ga. App. 438, 440-41 (715 SE2d 837) (2011) (punctuation omitted).

8

to prove that the money orders were counterfeit was copies of the processed orders themselves, which bore the stamp reading "Apparent Counterfeit." As noted in Division 1, *supra*, no representative of the Post Office testified to confirm the counterfeit status of the money orders, and no one testified that the alleged payors listed on the money orders (Henderson and Casa) were either fictitious persons or actual persons, who never gave authority for the money orders to be issued.

Nevertheless, during the hearing on Holmes's motion for new trial, the trial judge responded to Holmes's argument that the stamped money orders should have been excluded by stating that he did not rely on those documents in finding that Holmes was guilty of forgery. Rather, the trial judge explained that he found Holmes guilty because the money orders were not honored and because "no one could reasonably be expected to believe that this was [a] legitimate transaction . . . ." But money orders can be dishonored for a host of reasons, some of which involve no unlawful conduct. Moreover, while the absurdity of the email solicitation that prompted Holmes's actions certainly provided circumstantial evidence of Holmes's intent to defraud,[12] neither the email itself nor its proposition generally constitutes

---

[12] *See Taylor v. State*, 293 Ga. App. 551, 552-53 (1) (667 SE2d 405) (2008) (holding that evidence of defendant's deliberate ignorance as to whether checks were counterfeit was sufficient to prove intent to defraud).

sufficient evidence that the money orders were counterfeit. Thus, because there is no competent evidence establishing the essential element that Holmes possessed or made a counterfeit money order, the evidence is not sufficient to sustain his first-degree-forgery convictions.[13] Accordingly, Holmes's convictions must be reversed.[14]

*Judgment reversed. Ellington, C. J., and Phipps, P. J., concur.*

---

[13] *See Archer v. State*, 291 Ga. App. 175, 177 (1) (661 SE2d 230) (2008) (holding that State's failure to provide evidence establishing essential element that defendant uttered or delivered a forged check required reversal of defendant's forgery conviction); *Adams v. State*, 217 Ga. App. 759, 760 (1) (458 SE2d 918) (1995) ("Forgery under OCGA § 16-9-1 (a) requires proof that the [instrument] purports to have been made by authority of one who did not give such authority." (punctuation omitted)).

[14] *See Cuyuch v. State*, 284 Ga. 290, 295 (3) (667 SE2d 85) (2008) (reversing conviction because inadmissible hearsay statements could not be considered in evaluating the sufficiency of the evidence to support defendant's conviction).