A11A1018. NASSAU v. THE STATE.
(715 SE2d 837)

DILLARD, Judge.

Following a bench trial, Dorian Nassau was convicted of two counts of making a terroristic threat. He appeals his conviction, arguing that the evidence was insufficient to prove his guilt beyond a reasonable doubt. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the trial court's guilty verdict,[1] the evidence shows that in the early evening of March 21, 2007, Nassau scheduled an appointment to show some rental property that he owned to prospective tenants. Upon his arrival, however, Nassau discovered that the electrical power to the property had been cut off and that the electricity meter near the back door had been completely removed. After closer inspection, Nassau noticed a red tag where the meter previously had been affixed, which led him to surmise that his power company, Snapping Shoals EMC, had removed it. Consequently, Nassau called Snapping Shoals EMC to inquire about the missing meter and spoke with a night dispatcher for the company. When the night dispatcher explained that the meter was removed based on suspicion that someone had tampered with it and further explained that Nassau would have to pay approximately $235 if he wanted to have his power reestablished that night, Nassau ended the call.

---

[1] *See, e.g., Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

A few minutes later, Nassau called back and told the night dispatcher that he "didn't get to cuss [him] out the way [he] wanted to. . . ." After the dispatcher reiterated why Snapping Shoals EMC had turned off the power and removed the meter, Nassau became angry, and the following exchange occurred:

> Nassau: I'm fixin do some real gansta shit alright? Tell, put on my account, if I catch any of your fucking technicians on any of my property, it's going down with the scope baby boy, cause you just told me . . . .
>
> Dispatcher: Sir, do you realize that's considered a terroristic act and I can have you arrested for that right now?
>
> Nassau: You better understand who you dealing with man, my money is too . . . .
>
> Dispatcher: Sir, just for your information this phone call is being recorded, and they will pull this up and they have, we have every legal right to prosecute for what you said.
>
> Nassau: Bitch, tell him where he needs to go and get my shit right boy. You better put in your account, get my shit right. I ain't no average motherfucker, I want my shit back on. I want it in the morning. If it's not on in the morning, I'm at Snapping Shoals, it's going down boy.

At that point, the second call ended.

The next morning, Nassau called Snapping Shoals EMC again and spoke with a customer service representative ("CSR"). When the CSR was also unable to resolve Nassau's issues to his satisfaction, Nassau again became angry and responded as follows:

> Nassau: . . . and like I told [the night dispatcher], right now as it stands if any of you all technicians walk on any of my properties, since he wants to talk about it's my property this and that, they better come to my door. They better let me know they out there, cause I got a see em read it. Cause if I catch em on the side of my house, without them coming to my door, I'm not asking questions. Alright? I got a scope, I got a 30x30, I got a 40 cal. I ain't gonna hesitate to look through it. . . .
>
> CSR: Ok, now sir, the first thing you're gonna do, what, you're making a mistake by telling me that you're gonna use a gun on anybody that comes out there.
>
> Nassau: I'm telling you that if your technicians does not come to my door and tell me they are out there, I'm not trying to identify anybody on the side of my house. I'm

shooting and asking questions later. That's what I'm telling you. That's trespassing; the sign will be posted, so you better notate the account; if you arrive at [any of my properties], this customer requests you come to his door. You knock on his door. You let him know you are out there, and you read the meter after he knows that you're there, because if he catches you on his property, without notification, you may be blasted. In other words, rest in peace.

After again informing Nassau that she perceived his comments as threats to Snapping Shoals EMC personnel, the CSR ignored Nassau's request to speak to her supervisor and ended the call. That same day, Nassau called Snapping Shoals EMC several more times and each time spoke to the CSR's supervisor, who informed Nassau that she would be reporting his threats to the local sheriff's department.

Thereafter, Nassau was indicted on two counts of making terroristic threats[2] with the first count based on his telephone conversation with the night dispatcher and the second count based on his telephone conversation with the CSR. Nassau waived his right to a jury trial and proceeded with a bench trial, during which both the dispatcher and the CSR testified that Nassau's threats made them fear for the safety of any technicians dispatched to Nassau's property. The State also introduced as evidence a digital recording of all of the subject telephone calls. At the trial's conclusion, the court found Nassau guilty on both counts. Subsequently, Nassau moved for a new trial, which the trial court denied. This appeal follows.

In his sole enumeration of error, Nassau contends that the evidence was insufficient to support his convictions of making terroristic threats, arguing that the State failed to prove beyond a reasonable doubt that his threats were specifically directed toward any particular victim. We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[3] And in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[4] Accordingly, the trier of fact's verdict will be upheld "[a]s

---

[2] See OCGA § 16-11-37 (a).

[3] See, e.g., English v. State, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[4] Joiner, 299 Ga. App. at 300 (citation and footnote omitted).

long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case[.]"[5]

A defendant "commits the offense of a terroristic threat when he or she threatens to commit any crime of violence . . . with the purpose of terrorizing another[.]"[6] A determination of whether a defendant has committed "[t]he crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize."[7] Furthermore, "OCGA § 16-11-37 encompasses threats of physical violence directed toward an absent third party."[8] Moreover, "[t]hat the message was not directly communicated to the victim would not alone preclude a conviction *where the threat is submitted in such a way as to support the inference that the speaker intended or expected it to be conveyed to the victim*."[9] Finally, "a defendant need not have the immediate ability to carry out the threat to violate OCGA § 16-11-37 (a)."[10]

Nassau argues that his alleged threats were not directed toward any particular person and that, therefore, those threats cannot be characterized as having been committed with the purpose of terrorizing another as the statute requires.[11] However, contrary to his claim, Nassau specifically and repeatedly threatened to shoot *any* Snapping Shoals EMC technicians who ventured onto his property and further threatened to engage in violence at the company's offices if his power was not turned on by the next morning. Furthermore, Nassau repeatedly demanded that the night dispatcher and the CSR note the threats in his account records. There was, then, sufficient evidence for the trier of fact to find that Nassau's threats were specifically directed toward Snapping Shoals EMC employees and that he expected or intended that the threats would be communicated to those employees.[12] Accordingly, the trial court did not err in finding that Nassau was guilty beyond a reasonable doubt of committing terroristic threats.

---

[5] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

[6] OCGA § 16-11-37 (a).

[7] *Armour v. State*, 265 Ga. App. 569, 571 (1) (594 SE2d 765) (2004) (footnote omitted).

[8] *Brown v. State*, 298 Ga. App. 545, 547 (680 SE2d 579) (2009) (citation omitted).

[9] *Armour*, 265 Ga. App. at 571 (1) (footnote omitted).

[10] *Reeves v. State*, 288 Ga. App. 544, 545 (654 SE2d 449) (2007).

[11] *See Sidner v. State*, 304 Ga. App. 373, 375-76 (1) (696 SE2d 398) (2010) (reversing defendant's conviction of committing terroristic threats because there was no evidence that defendant's threats were directed toward any particular person or that defendant intended that his threats would be conveyed to any particular person).

[12] *See, e.g., Brown*, 298 Ga. App. at 548-49 (upholding defendant's conviction of making terroristic threats when defendant intended for his threats to be communicated to victims); *Armour*, 265 Ga. App. at 571 (1) (same).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED AUGUST 17, 2011.

*Jackie G. Patterson*, for appellant.
*Layla H. Zon, District Attorney, Melanie M. Bell, Assistant District Attorney*, for appellee.