A11A2049. LAYNE v. THE STATE.

(722 SE2d 351)

DILLARD, Judge.

Following a trial by jury, Ronald Layne was convicted of reckless conduct by discharging a firearm within 50 yards of a public street,[1] terroristic threats,[2] and possession of a firearm by a convicted felon.[3] On appeal, Layne contends that the evidence was insufficient to sustain his convictions for terroristic threats and possession of a firearm. For the reasons set forth infra, we affirm.

---

[1] *See* OCGA § 16-11-103.
[2] *See* OCGA § 16-11-37 (a).
[3] *See* OCGA § 16-11-131 (b).

Viewed in the light most favorable to the jury's verdict,[4] the record shows that on April 18, 2005, Layne became engaged in an altercation with a neighbor after he swerved to hit the neighbor's dog and then blocked the neighbor's truck with his own vehicle. When the neighbor exited his truck to confront Layne, both the neighbor and a passenger in the truck heard a gunshot, and the passenger saw that Layne was wielding a handgun outside the window of his car.[5] Layne then quickly put his vehicle in reverse and drove to his home down the road.

This incident was observed from a distance by an off-duty Albany police officer, who heard the gunshot and saw Layne retract his arm through the open window of his vehicle while holding a handgun. The officer drew his weapon and approached Layne's house, whereupon Layne exited the residence and emerged onto a screened front porch, bearing a handgun and a high-pressure gas cylinder. Although the officer commanded Layne to drop the weapon, he refused to do so, responding instead that he would blow up the house and that he was "going to kill us all." Given this threat and the fact that Layne also revealed that his 80-year-old mother was inside the home, the officer fell back to a safer location, and Layne retreated into the house.

Thereafter, a hostage situation ensued with the local SWAT team responding, and the house was placed under surveillance after law enforcement withdrew when Layne became agitated by the heavy police presence. Indeed, law enforcement backed off after a police-hostage negotiator spoke with Layne by phone and was informed that Layne had a propane tank inside and that he would blow up the house if the police came any closer. And despite the negotiator's efforts to communicate with Layne, he continued to rant that he would blow up the home with propane should officers approach.

At one point during the standoff, Layne placed a call to a neighbor who lived directly behind him and told her that the police were holding him hostage. When the neighbor spoke to Layne a second time, he explained that if the police attempted to arrest him, he would use propane to blow up the home with his mother inside. This greatly concerned the neighbor, who knew that Layne's mother was in poor health and required the use of oxygen tanks.

Layne's residence remained under surveillance overnight, but he nonetheless managed to leave the home at one point. The crisis eventually came to an end when Layne was immediately appre-

---

[4] *See, e.g., Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

[5] This was the foundation of Layne's reckless-conduct conviction, which was indicted as aggravated assault but reduced by the jury to the lesser-included offense, and which he does not challenge on appeal.

hended upon his return early the next morning. Officers then searched the home pursuant to a search warrant and located a dirty propane tank inside the kitchen, which appeared to have been brought in from outdoors. Additionally, the neighbor Layne called the night before came over to check on Layne's mother, and she too observed the propane in the kitchen along with two oxygen tanks used by Layne's mother.

As police continued their search of the home, they discovered Layne's padlocked bedroom, in which they located a loaded shotgun, a rifle, rifle cartridges, and other forms of ammunition.[6] In a spare bedroom, officers located a loaded semiautomatic handgun that used a type of ammunition found in Layne's bedroom. There were no guns in the room belonging to Layne's mother. Finally, officers searched behind the home in an outdoor shed that Layne sometimes occupied. Inside that shed, they found additional ammunition for the types of guns discovered in the home.

Thereafter, Layne was indicted but was not brought to trial for some time due to a period of incompetency. When he was found competent to stand trial, Layne chose not to pursue an insanity defense, and he was ultimately convicted of one count of reckless conduct, one count of terroristic threats, and three counts of possessing a firearm as a convicted felon. This appeal follows.

At the outset, we note that after a defendant has been convicted, "we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence."[7] And we do not weigh the evidence or determine witness credibility, "but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[8] Moreover, to the extent that there are any conflicts in the evidence, "[i]t is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties . . . ."[9] With these guiding principles in mind, we will now address each of Layne's enumerations of error in turn.

1. Layne first contends that the evidence against him was insufficient to sustain his conviction for making terroristic threats. Specifically, Layne argues that he lacked the necessary intent to commit the offense due to a history of mental illness. We disagree.

Pursuant to OCGA § 16-11-37, a person makes a terroristic threat "when he or she threatens to commit any crime of violence . . .

---

[6] Officers also observed a set of nunchucks in Layne's room and butcher knives strategically placed throughout the home.

[7] *Powell*, 310 Ga. App. at 144 (punctuation omitted).

[8] *Id.* (punctuation omitted).

[9] *Mask v. State*, 309 Ga. App. 761, 763 (2) (711 SE2d 348) (2011) (punctuation omitted).

with the purpose of terrorizing another . . . ."[10] And the determination of whether a defendant has made a terroristic threat "focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize."[11] In this regard, "[d]irect evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a trier of fact to find the threats were made for such a purpose."[12]

On the issue of intent, Layne argues that his conviction should be reversed because he "was untreated and had not been taking his medications" at the time of the alleged crimes. Additionally, he contends that any threats were conditional and spoken to his neighbor, not to the party that felt threatened (i.e., the police). But the evidence belies this latter argument. As to the former, although there was testimony that Layne suffered from a history of mental illness,[13] he did not plead the affirmative defense of insanity.[14] And ultimately, the issue of Layne's criminal intent was a question of fact for the jury,[15] which was presented with sufficient evidence to establish the requisite criminal intent.

Indeed, the evidence shows that Layne made repeated threats to blow up his home with propane if the police came any closer. First, he threatened the officer who initially responded to his home after the violent altercation with a neighbor, and he did so while actually holding a high-pressure gas cylinder and a handgun. In the second instance, he made the threat over the phone to a hostage negotiator, which resulted in the withdrawal of the police force out of concern for the safety of law enforcement, Layne, Layne's mother, and neighboring homes. And in the third instance, Layne reiterated his

---

[10] OCGA § 16-11-37 (a); *see also Nassau v. State*, 311 Ga. App. 438, 441 (715 SE2d 837) (2011).

[11] *Nassau*, 311 Ga. App. at 441 (punctuation omitted).

[12] *Clement v. State*, 309 Ga. App. 376, 380 (1) (b) (710 SE2d 590) (2011) (punctuation omitted).

[13] There was testimony that Layne had been diagnosed with schizoaffective disorder, bipolar disorder, delusions, and paranoia.

[14] *See Foster v. State*, 283 Ga. 47, 48 (1) (656 SE2d 838) (2008) ("A defendant claiming insanity has the burden of proving this affirmative defense by a preponderance of the evidence; unless the evidence of insanity is overwhelming, a jury determination that the defendant was sane at the time of the crime will be upheld."); *see also* OCGA § 16-3-2 (insanity as defense).

[15] *See* OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."); *see also Brown v. State*, 298 Ga. App. 545, 548 (680 SE2d 579) (2009) ("The intent with which one does an act . . . is particularly an issue for the finder of fact."); *Bostic v. State*, 183 Ga. App. 430, 433 (3) (359 SE2d 201) (1987) (holding that question of defendant's criminal intent when he claimed that allegedly terroristic threats were just "big talk" was an issue for the jury's consideration, not the court).

direct threats to the officers by phoning a neighbor and informing her that he would blow up his home with propane if the police approached. Accordingly, given Layne's actions and demeanor, as well as the fact that the police tailored their response to the situation because they took the threats seriously,[16] the jury was presented with sufficient evidence by which to find that Layne intended to terrorize the responding officers by communicating his threat to blow up the home using propane.[17]

2. Layne also contends that he lacked the necessary intent to commit the crime of possessing firearms as a convicted felon because the guns found in the home were actually owned by his mother. We disagree.

In Georgia, it is illegal for any person who has been convicted of a felony to possess a firearm,[18] and possession of a firearm does not require ownership.[19] Moreover, possession can be actual or constructive.[20] Thus, the State needed only to prove that Layne, though not in actual possession or even the owner of the firearms in question, had "both the power and the intention at a given time to exercise dominion or control" over the firearms to be in constructive possession.[21] This, the State did.[22]

---

[16] *See Shepherd v. State*, 230 Ga. App. 426, 427 (496 SE2d 530) (1998) (holding that in considering defendant's intent, jury could consider that threats were taken seriously); *Stone v. State*, 210 Ga. App. 198, 199 (435 SE2d 527) (1993) (holding that evidence of terroristic threats was corroborated by defendant's angry and violent behavior toward officers).

[17] *See Hobby v. State*, 298 Ga. App. 52, 53 (679 SE2d 72) (2009) (holding that defendant's behavior both before and after threat demonstrated an intent to terrorize the victim); *Robinson v. State*, 288 Ga. App. 219, 221 (2) (653 SE2d 810) (2007) (holding that employee's threat to burn down restaurant if he was not paid immediately provided sufficient evidence to support terroristic threats conviction); *Boone v. State*, 155 Ga. App. 937, 939 (2) (274 SE2d 49) (1980) (holding that circumstances surrounding statements and actions of defendants supported jury's finding that terroristic threats made with the requisite intent and were not conditional). *Compare Koldewey v. State*, 310 Ga. App. 788, 791 (1) (714 SE2d 371) (2011) (reversing conviction when defendant communicated threat for purpose of seeking mental health evaluation and treatment); *Wiggins v. State*, 171 Ga. App. 358, 359 (1) (319 SE2d 528) (1984) (reversing conviction when defendant made a threat to a third party unrelated to the alleged target, defendant had a history of mental illness, and the message was conditional in nature).

[18] OCGA § 16-11-131 (b).

[19] *Parramore v. State*, 277 Ga. App. 372, 373 (626 SE2d 567) (2006) ("[T]o violate OCGA § 16-11-131 (b), [the defendant] needed only to possess—not own—the gun in question."); *see also Reece v. State*, 257 Ga. App. 137, 139 (1) (a) (570 SE2d 424) (2002) ("It is the possession, not the ownership, of the weapon by a convicted felon which constitutes a criminal violation.").

[20] *Parramore*, 277 Ga. App. at 373 ("Possession can be either actual or constructive.").

[21] *Id.* (punctuation omitted).

[22] We note that Layne's trial was bifurcated on the issue of possessing firearms as a convicted felon, with the State introducing a certified felony conviction only after the jury rendered a verdict on the other counts. The trial court's order denying Layne's motion for new trial notes that there is no transcript from this latter portion of the proceedings due to technical difficulties. Because Layne challenges evidence presented earlier in the proceedings—namely, the evidence of possession—the appellate record contains the transcripts

As discussed supra, the evidence shows that Layne's bedroom contained two firearms and ammunition for a third gun that was found in a spare bedroom. Additionally, a shed used by Layne also contained ammunition for the guns in question. This evidence was sufficient to show that Layne constructively possessed three firearms as a convicted felon.[23]

Accordingly, for all the foregoing reasons, we affirm Layne's convictions.

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED JANUARY 18, 2012.

*Troy E. Golden*, for appellant.
*Gregory W. Edwards, District Attorney, Matthew Breedon, Assistant District Attorney*, for appellee.

---

necessary for our review of this enumeration.

[23] *See Mask*, 309 Ga. App. at 764 (2) (sufficient evidence of possession when gun found under bed in bedroom belonging to convicted felon); *Reece*, 257 Ga. App. at 138 (sufficient evidence of possession when convicted felon "had actual knowledge of and direct access to two weapons concealed in his bedroom"); *see also Crawford v. State*, 233 Ga. App. 323, 324 (1) (b) (504 SE2d 19) (1998).