**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 5, 2016**

# In the Court of Appeals of Georgia

A16A0471. HARPER v. THE STATE.

ELLINGTON, Presiding Judge.

A Coweta County jury found Christopher Harper guilty beyond a reasonable doubt of eleven offenses arising out of a series of confrontations with detention officers at the Coweta County jail during May, June, and July 2013. Following the denial of his motion for a new trial, Harper appeals, challenging the sufficiency of the evidence with regard to three counts of the offense of a terroristic threat, OCGA § 16-11-37 (a); and one count of the offense of interference with government property, OCGA § 16-7-24 (a).[1] For the reasons explained below, we affirm.

---

[1] The jury found Harper not guilty of a second count of interference with government property and the offense of public indecency. Harper raises no claim of error with regard to the remaining counts to which the jury returned a verdict of guilty: three counts of obstruction of a law enforcement officer, OCGA § 16-10-24; one count of simple assault, OCGA § 16-5-20 (a) (2) (as a lesser included offense of

On appeal from a criminal conviction, the appellate court

> view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

> In particular, the intention with which an act is done is peculiarly for the finder of fact. It is often difficult to prove with direct evidence an individual's intent as it existed at the time of the act for which he is being prosecuted. Thus, intent is often proved through the use of circumstantial evidence.

(Citation and punctuation omitted.) *Smith v. State*, 319 Ga. App. 640 (738 SE2d 95) (2013). A jury may infer that a person acted with criminal intent after considering the

---

aggravated assault); two counts of simple battery, OCGA § 16-5-23 (a) (1); and one count of disorderly conduct, OCGA § 16-11-39 (a) (1) (as a lesser included offense of a terroristic threat).

"words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6.

Viewed in the light most favorable to the verdict, the record shows the following. Harper arrived at the jail in May 2013. On May 28, after Harper had been moved to an isolation cell because of disciplinary problems, he covered a ceiling-mounted security camera and the inside of his cell door, including a viewing window, with feces. The security camera and the jail cell were the property of the Coweta County Sheriff's Office. With the lens obscured by feces, the camera was unable to record video. When officers entered the cell, Harper threw a cup of feces at one of the officers. After the incident, the befouled equipment and surfaces were cleaned by an inmate worker.

An officer, E. S., testified that, on June 30, after another feces-smearing incident, Harper said, in the presence of other officers, "that he was going to steal a gun; he was going to come to my house and break in and that he would kill me and my family, whoever was there with me. He said he was going to torture me; . . . he said he was going to blow my brains out, and anybody that was there with me would get the same."

3

The next day, July 1, Harper resisted being placed in a restraint chair and then he threatened to kill one of the officers involved in the restraint, J. M., and Officer J. M.'s children. Again, other officers witnessed the threat.

On July 18, during another confrontation, Harper told Officer E. S., "[r]emember what I told you last time. I don't care if your wife dies, your kids die. . . . I'm going to get your ass." Officer E. S. understood Harper to be referencing the threats he made to Officer E. S. on June 30. Harper then threw a cup of urine on Officer E. S. and another officer, J. G. This interaction between Harper, Officer E. S. and Officer J. G. during which the threats were made, was recorded without audio; the recording was admitted into evidence and played for the jury.

The indictment charged Harper with the offense of a terroristic threat by "threaten[ing] to murder" Officer E. S. on June 30, 2013, (Count 6), by "threaten[ing] to commit battery to" that officer on July 18, 2013 (Count 9), and by "threaten[ing] to murder" Officer J. M. on July 1, 2013 (Count 7), each of the threats "being a crime of violence, with the purpose of terrorizing" the named victim.

Count 4 charged Harper with the offense of interference with government property in that, on May 28, 2013, he "unlawfully deface[d] the Coweta County Jail,

4

property of Coweta County Sheriff's Office, by wiping feces on a jail cell camera, wall, floor, door, and window[.]"

At trial, Harper did not present an insanity defense.

1. Harper contends that the evidence was insufficient to convict him of a terroristic threat, as charged in Counts 6, 7, and 9 of the indictment, in that no reasonable person would have believed that his words constituted "a true threat" under the circumstances and that there was no evidence that he uttered the threats with the purpose of terrorizing the victims. In arguing that the evidence was insufficient, he contends that the evidence established that his jailers instigated the confrontations with him, his words were said only after he was physically restrained, he was not capable of acting on his words, two of the three threats were "conditional," and he was mentally unstable and incapable of understanding the consequences of his actions.

> [T]he determination of whether a defendant has made a terroristic threat focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize. In this regard, direct evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a trier of fact to find the threats were made for such a purpose.

(Punctuation and footnotes omitted.) *Layne v. State*, 313 Ga. App. 608, 611 (1) (722 SE2d 351) (2012). None of the factors identified by Harper precluded the jury from finding that he threatened the victims with violence and that his purpose was to terrorize them. See *Smith v. State*, 319 Ga. App. 640, 641-642 (738 SE2d 95) (2013) (The evidence authorized a finding that the defendant intended to terrorize the owner of a hair salon and a customer, where he went into the salon and loudly cursed the victims, threatened to make them get on the floor and to "spray" them, and where there was no evidence that the defendant had any purpose for his threatening statements other than terrorizing victims, such as humor.); *Reeves v. State*, 288 Ga. App. 544, 545 (654 SE2d 449) (2007) (The evidence was sufficient to support a conviction of a terroristic threat where the defendant was handcuffed and being placed in a patrol car to be transported to jail and he threatened to kill his wife when he got out of jail, even though he lacked the immediate ability to carry out the threat.); *Moss v. State*, 139 Ga. App. 136, 137 (1) (228 SE2d 30) (1976) (The evidence was sufficient to support a conviction of a terroristic threat where the defendant threatened to kill some of the police officers present at the jail where he was being held, even though the police officers were armed and the defendant was not.). See also *Layne v. State*, 313 Ga. App. at 611 (1) (The evidence authorized to

6

find that, in threatening to blow up his house, the defendant intended to terrorize police officers responding to a disturbance, even though the defendant had a history of mental illness and had not been taking his mental health medication, where he did not plead the affirmative defense of insanity.). The evidence in this case was sufficient for the jury to find that Harper intended to terrorize the victims.

2. Harper contends that the evidence was insufficient to show that his conduct rose to the level of defacing government property, as charged in the indictment, in that, although there was evidence that he "dirtied" the property at issue, the property was then "simply cleaned." The applicable statute provides: "A person commits the offense of interference with government property when he destroys, damages, or defaces government property[.]" OCGA § 16-7-24 (a).

The term "deface[ ]" is not defined.

> [I]n considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Punctuation and footnotes omitted.) *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013). In addition, "the fundamental rules of statutory construction require us . . . to avoid a construction that makes some language mere surplusage." (Punctuation and footnote omitted.) *Algren v. State*, 330 Ga. App. 1, 6 (3) (764 SE2d 611) (2014).

The plain and ordinary meaning of "deface" in both legal and lay parlance is to mar the face or impair the surface appearance of the object. *Monroe v. State*, 250 Ga. 30, 34, n. 4 (295 SE2d 512) (1982); *Sabel v. State*, 248 Ga. 10, 12-13 (2) (282 SE2d 61) (1981), overruled on other grounds by *Rower v. State*, 264 Ga. 323 (443 SE2d 839) (1994). Just as, when a thing is damaged, the damage may be reparable or irreparable, we conclude that the appearance of a thing may be impaired permanently or temporarily. See *Sifuentes v. State*, 293 Ga. 441, 442 (746 SE2d 127) (2013) (buildings were "deface[d]" by spray painted graffiti or tagging); *Sabel v. State*, 248 Ga. at 13 (2) (Spraying government buildings and monuments with black spray paint "defaced" them and constituted interference with government property.). The fact that the camera and cell surfaces could be cleaned and restored to their previous appearance did not preclude the jury from finding that Harper defaced them by

wiping feces on them. The evidence was sufficient for the jury to find the elements of interference with government property.

*Judgment affirmed. Branch and Mercier, JJ., concur*.