**FOURTH DIVISION**
**MERCIER, C. J,**
**DILLARD, P. J., AND LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 13, 2025**

# In the Court of Appeals of Georgia

A25A0666. BIBBS v. THE STATE.

DILLARD, Presiding Judge.

Following a bench trial, Marlin Bibbs was convicted of possessing a firearm as a convicted felon. Bibbs appeals from this conviction, arguing that (1) the evidence was insufficient to sustain it, and (2) the court erred in denying his motion to suppress evidence when the search warrant lacked probable cause and was overly broad in scope. For the following reasons, we affirm.

Viewed in the light most favorable to the trial court's judgment,[1] the record shows that on October 13, 2020, Illinois State Police conducted a traffic stop of a

---

[1] *See, e.g.*, *Sims v. State*, 360 Ga. App. 886, 888 (862 SE2d 556) (2021) ("The standard of review for an appeal from a criminal bench trial requires us to view the evidence in a light most favorable to support the trial court's judgment.").

vehicle driven by Luis Alberto De Jesus-Merced in Jefferson County, Illinois. Also in the car was a 10-year-old male passenger who De Jesus-Merced claimed was his godson, and who was identified as having an address of 1209 Richmond Ridge, Loganville, Georgia. When the officer checked NCIC, De Jesus-Merced was identified as a child-sex offender. De Jesus-Merced then provided consent to search his Apple iPhone; and while the officer looked through the phone's photographs, he observed "several images of children in provocative images [sic]."

Illinois law enforcement later obtained a search warrant for further investigation and analysis of the images on De Jesus-Merced's iPhone, during which three images of interest were identified. The first image—dated October 11, 2020, and taken on a Pixel cell phone[2]—depicted an adult male penis penetrating an anus. The second image—dated October 11, 2020, and taken on a Pixel cell phone—depicted the same male penis penetrating the same anus; but based on the lack of hair on the second individual's buttocks and the smaller size of their hips, law enforcement believed the second individual was a child. Also visible in this image was a set of blue sheets with a white type-print logo. Finally, a third image—dated October 12, 2020, and taken on

---

[2] A Samsung Pixel XL cell phone was found in De Jesus-Merced's vehicle.

a Pixel cell phone—depicted a child in blue-and-green underwear lying on a bed with a red blanket and blue sheets with white New York Giants logos. The GPS coordinates for this third digital photo corresponded to the address of 1209 Richmond Ridge, Loganville, Walton County, Georgia 30052—the same address belonging to De Jesus-Merced's minor passenger.

Given what was discovered during De Jesus-Merced's traffic stop, a deputy with the Walton County Sheriff's Office in Georgia took out a search warrant for the Loganville address. And in addition to providing the above facts, the search warrant affidavit also noted the deputy's belief that there was probable cause to search the address for evidence related to human trafficking, sodomy, aggravated child molestation, enticing a minor for indecent purposes, sexual battery, and sexual exploitation of children. A search warrant was then issued to look for the blue New York Giants bed sheets and "electronic media capable of storing digital imag[es] (to be searched by qualified personnel)."[3]

---

[3] "Media" is "[a] physical object (as a disk, tape cartridge, etc.) used for the storage of data." Oxford English Dictionary Online, *Media* (*noun*) (n.2) (last visited April 30, 2025), https://doi.org/10.1093/OED/1012096631. "Digital," as an adjective, can mean "[o]f technologies, media, etc.: involving digital data; making use of digital computers or devices," Oxford English Dictionary Online, *Digital* (*adj.*) (I.2.c)) (last visited April 30, 2025), https://doi.org/10.1093/OED/2750295367. And

Law enforcement then went to the Loganville address, where they found Bibbs and two women—Amber Bey and Doris Bibbs. And while conducting the search, officers discovered several firearms and ammunition. They also learned that Marlin Bibbs was a convicted felon. As a result, the firearms and ammunition were collected. The firearms included an AR-style rifle located in plain view on the floor near the lefthand side of the bed in the primary bedroom; a bag of ammunition on the floor under the same bed; and a holstered revolver found between the bed's mattress and box springs on the lefthand side. And within the same bedroom were personal items belonging to Bibbs—including his passport, social-security card, and insurance documents showing that he lived at that address. These and other items were found in a night stand on the lefthand side of the bed, in dressers, and in boxes. All of the items—including the firearms—were found while law enforcement searched for

used as a noun, it can mean "[a] device, piece of equipment, etc., which uses digital technology." Oxford English Dictionary Online, *Digital* (*noun*) (4.b) (last visited April 30, 2025), https://doi.org/10.1093/OED/7479029291. We use the words "media" and "device" interchangeably in this opinion.

electronic media, which can vary in size and be hidden inside other items (such as books).[4]

Bibbs was later indicted on one count of possession of a firearm as a convicted felon because he "knowingly and without lawful authority[ ] possess[ed] a Sig Sauer 9 mm pistol, a Charter Arms 9mm revolver, and a Radical Firearms rifle, firearms, accused having been convicted of a felony offense . . . on May 30, 2000 . . . ." As to the Sig Sauer 9mm pistol, before the bench trial, the State and Bibbs stipulated to the following facts: "In the master bedroom of the residence, [law enforcement] discovered a handbag resting on top of the chest of drawers on the right side of the bedroom . . . . This is a purse that belongs to Amber Bey. Found inside that purse was a Sig Sauer Pistol, P365, serial number 66A806550." The parties also stipulated that the driver's license inside the purse belonged to Bey, and that Bey purchased or acquired the three firearms.

Bibbs filed a pretrial motion to suppress the evidence discovered as a result of the search warrant, arguing that law enforcement lacked probable cause to search the

---

[4] As recognized by the trial court, "[n]o evidence was presented during the [m]otion to [s]uppress [hearings] suggesting that the sheets were located or that any digital media was found that contained child sex abuse material."

residence and the warrant was overly broad in scope. The trial court ultimately denied the motion to suppress, concluding that the search warrant established a sufficient nexus between the images located on the iPhone in Illinois and the requested search location in Georgia. In doing so, the trial court pointed to the meta data linking the photos to the house—*i.e.*, the GPS coordinates for the photo of a child wearing only underwear and lying on a bed with the same sheets as those pictured in one of the child pornography photos. Additionally, the address for the GPS coordinates belonged to the minor child who was in the car stopped in Illinois, which was driven by a convicted child-sex offender in possession of child pornography. And as for the scope of the warrant, as it related to allowing a search for "electronic media capable of storing digital imag[es]," the trial court concluded the magistrate court was allowed to "make a pragmatic, common-sense decision that there was a fair probability that more evidence of child molestation would be found on digital devices at the Richmond Ridge residence." Thus, the court denied the motion to suppress.

The bench trial ensued, and at its conclusion, the trial court found Bibbs "had constructive possession over at least two of the firearms in the bedroom" when they were located on the lefthand side of the room along with sensitive personal items

6

belonging to him (*e.g.*, his Social Security card, passport, insurance documents). These personal items, the court concluded, suggested Bibbs's routine access to the lefthand side of the bed where two of the three firearms were located. Bibbs now appeals from both his conviction and the court's denial of his motion to suppress.

1. Bibbs first argues the evidence was insufficient to sustain his conviction for possession of a firearm as a convicted felon. We disagree.

On appeal from a criminal conviction, we view the evidence "in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence."[5] We must determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[6] and in doing so, we do not weigh the evidence or determine witness credibility.[7] Thus, any conflicts or inconsistencies in the evidence were for the trial court to resolve as the finder of fact.[8] And so long as there is some

---

[5] *Winn v. State*, 345 Ga. App. 359, 360 (1) (813 SE2d 400) (2018) (punctuation omitted), *disapproved of on other grounds by Hill v. State,* 360 Ga. App. 143 (860 SE2d 893) (2021); *accord Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[6] 443 US 307 (99 SCt 2781, 61 LE2d 560) (1979).

[7] *Rankin*, 278 Ga. at 705; *Winn*, 345 Ga. App. at 360 (1).

[8] *See Rankin*, 278 Ga. at 705 ("Any conflicts or inconsistencies in the evidence are for the jury to resolve."); *Winn*, 345 Ga. App. at 360 (1) (same); *see also Sims*, 360 Ga. App. at 888 ("The standard of review for an appeal from a criminal bench trial

competent evidence—even though contradicted—to support each fact necessary to make out the State's case, we will uphold the verdict.[9]

Turning to this case, under Georgia law, "[a]ny person . . . who has been convicted of a felony by a court of this state or any other state . . . who receives, possesses, or transports any firearm commits a felony . . . ."[10] And possession of a firearm can be "either actual or constructive."[11] Importantly, a person constructively possesses an item when, "though not in actual possession, he knowingly has both the power and the intention at a given time to exercise dominion or control" over the

_____

requires us to view the evidence in a light most favorable to support the trial court's judgment.").

[9] *See Rankin*, 278 Ga. at 705 ("As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict."); *Winn*, 345 Ga. App. at 360 (1) (same); *see also Sims*, 360 Ga. App. at 888 ("The standard of review for an appeal from a criminal bench trial requires us to view the evidence in a light most favorable to support the trial court's judgment.").

[10] OCGA § 16-11-131 (b). Bibbs does not dispute that he is a convicted felon.

[11] *Lee v. State*, 362 Ga. App. 171, 173 (1) (867 SE2d 303) (2021); *accord Peppers v. State*, 315 Ga. App. 770, 771 (728 SE2d 286) (2012); *Layne v. State*, 313 Ga. App. 608, 612 (2) (722 SE2d 351) (2012).

item.[12] So, while constructive possession can be shown by circumstantial evidence, "as with any charge based on purely circumstantial evidence, in order to support a conviction, the evidence must exclude every reasonable hypothesis, save that of constructive possession by the defendant."[13] Finally, whether the evidence "shows something more than mere presence or proximity, and whether it excludes every other reasonable hypothesis, are questions committed principally to the trier of fact, and we should not disturb the decisions of the trier of fact about these things unless they cannot be supported as a matter of law."[14]

Here, the State presented sufficient evidence to show that Bibbs constructively possessed the rifle and revolver found on the lefthand side of the bed in the primary bedroom—the rifle being in plain view in the corner of the room and the revolver

---

[12] *Lee*, 362 Ga. App. at 173 (1) (punctuation omitted); *accord Peppers*, 315 Ga. App. at 772.

[13] *Lee*, 362 Ga. App. at 173 (1) (punctuation omitted); *accord Lebis v. State*, 302 Ga. 750, 754 (II) (808 SE2d 724) (2017); *see Hunt v. State*, 358 Ga. App. 897, 900 (856 SE2d 467) (2021) ("We recognize that constructive possession can be shown through circumstantial evidence. But where, as here, the State relies wholly on circumstantial evidence to establish possession, the proved facts must 'exclude every other reasonable hypothesis save that of the guilt of the accused.'" (citation omitted)).

[14] *Lebis*, 302 Ga. at 754 (II) (punctuation omitted).

tucked between the mattress and box springs. And on that same side of the bedroom were numerous sensitive documents belonging to Bibbs, including his social-security card, passport, and several files containing insurance documentation revealing that he lived at the address. To be sure, two other individuals—Amber Bey and Doris Bibbs—were also at the residence when it was searched; but the location of personal documents within the primary bedroom strongly supports the inference that Bibbs had access to the areas where the firearms were found—one being in plain view—and he

used that part of the room to store his belongings.[15] This enumerated error, then, lacks merit.

2. Next, Bibbs challenges the trial court's denial of his motion to suppress evidence discovered due to the executed search warrant. In doing so, he contends the search warrant (a) lacked probable cause and (b) was overly broad in scope with reference to "electronic media." We will consider each of these arguments in turn.

---

[15] *See Lebis*, 302 Ga. App. at 755-56 (II) (A) (holding there was sufficient evidence of joint constructive possession of firearms when personal items were intermixed within small hotel room where several firearms were located within plain view); *Cantrell v. State*, 204 Ga. App. 330, 331 (419 SE2d 141) (1992) (holding that "jury was authorized to find [the female] appellant to be in constructive possession of the gun found in the dresser drawer with female clothing"); *cf. Lee*, 362 Ga. App. at 174-75 (1) (holding there was insufficient evidence of constructive possession when defendant stayed at residence only part-time, rifle was routinely kept in the laundry room, rifle was brought to the home by another individual, rifle was routinely used by another person, and rifle appeared in a common area within the home only after defendant was removed from the residence); *Peppers*, 315 Ga. App. at 772 (holding there was insufficient evidence of constructive possession of a shotgun when evidence only showed that defendant "asked his roommate for permission to take officers to her room to retrieve the shotgun, and led officers to the roommate's bedroom where they retrieved it" or that defendant "handed the officers the shotgun that his roommate had placed by the door after hearing officers ask if there were guns in the home"); *Peterson v. State*, 252 Ga. App. 469, 471 (2) (556 SE2d 514) (2001) (holding there was insufficient evidence of constructive possession of firearms when "the only evidence linking [defendant] to the guns, other than his proximity to them, was the discovery at the apartment where the guns were found of paperwork bearing his name and photographs depicting him" but the paperwork did not contain an address and the photographs were not of the defendant alone).

(a) *Probable Cause.* Bibbs begins by claiming the search warrant lacked probable cause. We disagree.

Under the Fourth Amendment to the United States Constitution,[16] a search warrant in Georgia may be issued only on "facts sufficient to show probable cause that a crime is being committed or has been committed . . . ."[17] And when the judge who issues a warrant determines whether probable cause exists, they must

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them], including the "veracity'' and ''basis of knowledge'' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[18]

---

[16] *See* U.S. CONST. AMEND IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see also* GA. CONST. art. I, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

[17] OCGA § 17-5-21(a); *accord Sullivan v. State*, 284 Ga. 358, 360 (2) (667 SE2d 32 (2008).

[18] *Taylor v. State*, 303 Ga. 57, 60 (2) (810 SE2d 113) (2018) (punctuation omitted); *accord Medina-Hernandez v. State*, 364 Ga. App. 68, 68 (1) (874 SE2d 127)

Our duty, then, is to review the issuing judge's decision to determine whether there was a "substantial basis" for concluding that "probable cause existed to issue the search warrant[ ]."[19] And as a reviewing court, we give substantial deference to the finding of probable cause.[20] Indeed, the test for probable cause is "not a hypertechnical one to be employed by legal technicians, but is based on the 'factual and practical considerations of everyday life on which reasonable and prudent men act.'"[21] So, in making this determination, the judge "may draw reasonable inferences

---

(2022); *see Pugh v. State*, 318 Ga. 706, 714 (2) (a) (899 SE2d 653) (2024) ("Considering the totality of the circumstances outlined in the affidavit, the magistrate was authorized to make certain common-sense conclusions about human behavior, and infer that [defendant] was somehow involved in [victim's] murder, that evidence of his location and communications in the time surrounding the murder might be found in his cell phone records, and that the target phone number belonged to [defendant]." (punctuation and citations omitted)).

[19] *Taylor*, 303 Ga. at 60 (2) (punctuation omitted); *accord Medina-Hernandez*, 364 Ga. App. at 68 (1).

[20] *See Taylor*, 303 Ga. at 60 (2) ("A magistrate's decision to issue a search warrant based on a finding of probable cause is entitled to substantial deference by a reviewing court." (punctuation omitted)); *Medina-Hernandez*, 364 Ga. App. at 68 (1) (same).

[21] *Taylor*, 303 Ga. at 60-61 (2) (punctuation omitted); *accord Medina-Hernandez*, 364 Ga. App. at 68-69 (1).

from the material supplied . . . by applicants for a warrant."[22] Thus, even "doubtful cases" should be "resolved in favor of upholding a warrant."[23]

Here, Bibbs argues the State failed to establish a connection or nexus between the Loganville residence and the items that were sought—*i.e.*, the blue New York Giants bed sheets and "electronic media capable of storing digital images." More precisely, he contends the affidavit in support of the warrant "did not indicate that these items would be considered evidence of the alleged crimes" and failed to link the items to the crimes—which again were human trafficking, sodomy, aggravated child molestation, enticing a minor for indecent purposes, sexual battery, and sexual exploitation of children. He also claims there was no indication within the affidavit that people who commit such crimes "often store evidence of the crimes, such as photographs and videos, on digital media." And finally, he maintains the affidavit lacked a justification or explanation for why the Loganville address needed to be searched for the items.

---

[22] *Taylor*, 303 Ga. at 61 (2) (punctuation omitted); *accord Medina-Hernandez*, 364 Ga. App. at 69 (1).

[23] *Taylor*, 303 Ga. at 61 (2) (punctuation omitted); *accord Medina-Hernandez*, 364 Ga. App. at 69 (1).

We reject each of Bibbs's contentions. The magistrate judge who issued the search warrant was justified in concluding that there was a fair probability the described bed sheets and devices capable of storing electronic images would be located at the Loganville address. As detailed above, De Jesus-Merced—a convicted child-sex offender—was traveling with an unrelated minor *who lived at the Loganville address*. And during a search of the convicted sex offender's iPhone, law enforcement found two images of an adult male penis penetrating a child's anus (the production of which was an act of sexual exploitation of children,[24] and which depicted acts of aggravated

---

[24] *See* OCGA § 16-12-100 (b) (2) ("It is unlawful for any person knowingly to employ, use, persuade, induce, entice, or coerce any minor to engage in or assist any other person to engage in any sexually explicit conduct for the purpose of producing any visual medium depicting such conduct."); *see also* OCGA § 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts.").

child molestation,[25] sodomy,[26] and sexual battery[27]). In one of the photos, blue bed sheets with a white type-print logo were visible. A third image depicted a child wearing only underwear lying on a bed with blue sheets that had white New York Giants logos. And the GPS coordinates for this third digital photo corresponded to the address of 1209 Richmond Ridge, Loganville, Walton County, Georgia 30052, which indicated the photograph was taken at that location.

---

[25] *See* OCGA 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person[ ] . . . [d]oes an immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]").

[26] *See* OCGA § 16-6-2 (a) (1) ("A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another.").

[27] *See* OCGA § 16-6-22.1 (b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person."); OCGA § 16-6-22.1 (f) ("When the alleged victim is under the age of 16 years and the conduct is for the purpose of sexual arousal on the part of the alleged offender or alleged victim, consent of the alleged victim shall not be a defense to a prosecution under this Code section; provided, however, that if at the time of the offense the alleged victim is at least 13 but less than 16 years of age and the accused is 18 years of age or younger and no more than 48 months older than the alleged victim, this subsection shall not be applicable.").

Given the foregoing, the foundation for the search warrant was not based on mere suspicion.[28] Indeed, considering the totality of the circumstances (and the substantial deference we must give to the judge who issued the search warrant), a sufficient nexus was established between the items law enforcement sought to locate, the suspected crimes, and the Loganville residence.[29]

---

[28] *Cf. Landers v. State*, 355 Ga. App. 69, 72 (842 SE2d 525) (2020) (reversing denial of motion to suppress when "the only statement to come close to establishing a nexus between the charged crimes of aggravated child molestation and aggravated sodomy and the contents of the portable storage device" was that, due to the defendant "attempting to discard the storage device upon seeing law enforcement[,] [the investigator] believes that there may be evidence on the storage device that is crucial to the ongoing investigation" because "a suspicion or strong reason to suspect is an insufficient foundation for a finding of probable cause" (punctuation omitted)).

[29] *See Taylor*, 303 Ga. at 62 (2) (concluding that magistrate was provided with enough information to infer a connection between the defendant, the alleged crimes, and the location to be searched); *Pickens v. State*, 363 Ga. App. 716, 719 (1) (872 SE2d 480) (2022) (holding that "the omission of the fact that the only photograph containing a geotag did not itself depict abuse does not detract from the probable cause established by the search warrant affidavit" because "[t]he magistrate court could still conclude from the totality of the circumstances set forth in the affidavit that [the defendant] lived at the address associated with the geotag, that he likely kept digital media storage devices at his residence, and that those devices likely contained the images of child sexual abuse seen on the Google account"); *Manzione v. State*, 312 Ga. App. 638, 640-42 (a) (719 SE2d 533) (2011) (holding that search warrant affidavit provided probable cause for issuance of search warrant for defendant's residence when it contained information that records custodian for web-based services provider contacted the National Center for Missing and Exploited Children and reported internet protocol (IP) address for the originating computer that uploaded images of

(b) *The Particularity Requirement.* Bibbs next contends the trial court erred in denying his motion to suppress when the search warrant was overly broad and lacked particularity because it permitted officers to search for "electronic media capable of storing digital imag[es] (to be searched by qualified personnel)." Again, we disagree.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the . . . things to be seized."[30] And in this sense, we have explained that "although a warrant cannot leave the determination of what articles fall within its description and are to be seized entirely to the judgment and opinion of the officer

---

young children engaged in sexually explicit conduct to provider's online discussion board); *cf. Medina-Hernandez*, 364 Ga. App. at 70-73 (1) (considering whether "evidence of drug trafficking by an unknown male passenger in a vehicle provides probable cause to search an address at which the vehicle was registered to an unidentified female, where that unknown female drove herself and the unknown male to the address immediately after the drug trafficking activity, parked the car, and presumably went inside the premises with the unknown man" and concluding that it did not).

[30] U.S. CONST. AMEND. IV; *accord Leili v. State*, 307 Ga. 339, 341 (2) (834 SE2d 847) (2019); *see also* GA. CONST. Art. I, § I, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

executing the warrant, the degree of specificity in the description is flexible and will vary with the circumstances involved."[31] To that end, the "particularity requirement" only demands that "the executing officer be able to identify the property sought with reasonable certainty."[32]

Even so, Bibbs takes issue with the search warrant affidavit's failure to "list the owners of the house or who might reside there or whether there was any reason to believe the house contained electronic media." But this contention is a nonstarter. As the Supreme Court of the United States has explained, search warrants are "not directed at persons; they authorize the search of 'places' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized."[33]

---

[31] *Serdula v. State*, 356 Ga. App. 94, 111 (3) (b) (845 SE2d 362) (2020) (punctuation omitted); *accord Leili v. State*, 307 Ga. 339, 344 (2) (a) (834 SE2d 847) (2019); *Reaves v. State*, 284 Ga. 181, 184 (2) (d) (664 SE2d 211) (2008), *disapproved of on other grounds by Tatum v. State*, 319 Ga. 187 (903 SE2d 109) (2024); *Reyes-Castro v. State*, 352 Ga. App. 48, 60 (1) (b) (833 SE2d 73) (2019).

[32] *Serdula*, 356 Ga. App. at 111-12 (3) (b); *accord Reaves*, 284 Ga. at 187 (2) (d); *Reyes-Castro*, 352 Ga. App. at 60 (1) (b).

[33] *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (II) (98 SCt 1970, 1976, 56 LE2d 525) (1978) (punctuation omitted); *accord Andrews v. State*, 219 Ga. App. 808, 810 (2) (466 SE2d 909) (1996); *Bing v. State*, 178 Ga. App. 288, 289 (1) (342 SE2d 762) (1986)

Bibbs also complains that there was no language "limiting the search to electronic media capable of storing digital images relevant to the crimes alleged." But as explained above, the search warrant and supporting affidavit established a nexus between the suspected crimes, the address in question, and the items law enforcement sought to locate (*i.e.*, the bed sheets and "electronic media capable of storing digital images").

As to the final part of Bibbs's argument (*i.e.*, that the search warrant did not clearly limit what law enforcement could search for *within* the electronic devices once seized),[34] this is of no consequence for the items he seeks to suppress. First, officers

(physical precedent only).

[34] *See Henson v. State*, 314 Ga. App. 152, 157-58 (723 SE2d 456) (2012) ("[J]ust because an officer has the authority to search the data stored on a personal computer. . . does not mean that he has the unbridled authority to sift through all of the data stored on the computer. Instead, officers must be as specific as possible in a search warrant regarding what it is they are seeking on the computer and conduct the accompanying search, as the officer did here, in a way that avoids searching files that are not reasonably likely to contain the kinds of data identified in the warrant." (footnotes omitted)). *Compare State v. Wilson*, 315 Ga. 613, 615 (884 SE2d 298) (2023) ("The State points to the preprinted form language following this sweeping authorization as 'limiting' in nature. However, that language clearly states that 'the foregoing described property'—that is, 'any and all stored electronic information' on the phones—'constitutes evidence connected with the crimes.' This language cannot plausibly be read, as the State suggests, to limit the otherwise limitless authorization to search for and seize any and all data that can be found on [the defendant's] cell

were limited to searching for and seizing devices that were capable of storing digital images of the crimes alleged, but they were not permitted to seize devices *incapable* of storing digital images—for example, devices only capable of storing digital audio.[35] And the circumstantial evidence of Bibbs's possession of the firearms was found within the primary bedroom of the residence while officers searched for such devices; the evidence was not found *within* such devices.[36] So, even if we were to assume the

phones." (punctuation omitted)), *with Westbrook v. State*, 308 Ga. 92, 98 (3) (a) (839 SE2d 620) (2020) (holding that "the use of the phrase 'electronic data' was specific enough to enable a prudent officer to know to look for photographs and videos stored on [the defendant's] cell phone").

[35] *See Perez v. State*, 316 Ga. 433, 447, 449-50 (3) (c)(888 SE2d 526) (2023) (affirming the denial of defendant's motion to suppress and explaining that search warrant "did not simply provide an unbounded description authorizing the search and seizure of any and all data on the cell phone, without linking that data to the crimes at issue" but instead, "the language of the warrant, in context, makes clear that it authorized the search and seizure of only those classes of applications and data that could have been used to communicate with the victim or other suspects"); *McIntyre v. State*, 311 Ga. App. 173, 176 (2) (a) (715 SE2d 431) (2011) (rejecting argument that search warrant was overly broad when it permitted seizure of "electronic storage devices" because "the search warrant was supported by an affidavit of the investigating officer detailing [minor's] allegations of abuse, . . . which was allegedly photographed with a digital camera").

[36] *Cf. State v. Thurston*, 368 Ga. App. 667, 667-68, 672 (888 SE2d 362) (2023) (affirming trial court's grant of defendant's motion to suppress evidence obtained during warrantless search of the contents of his cell phone when "[t]he warrant authorized the seizure of a number of items, including 'digital devices such as

warrant was overly broad by its parenthetical inclusion that the seized devices were "to be search by qualified personnel," there is no indication that a broader search occurred here when the officers located the firearms during a permissible search for the electronic devices.[37] Likewise, our Supreme Court has explained that "the

smartphones,' but did not authorize a search of the contents of such devices"); *Serdula v. State*, 356 Ga. App. 94, 112 (3) (b) (845 SE2d 362) (2020) ("[A]lthough an electronic device, a cell phone is 'roughly analogous' to a container that properly can be opened and searched for electronic data, similar to a traditional container that can be opened to search for tangible objects of evidence. Indeed, the similarity of a cell phone to a traditional container in which there might be found physical entities of evidence is clear; it is reasonable to believe that the object of the search will be found *inside* the cell phone. (footnotes & punctuation omitted)).

[37] *See State v. Santiago*, 371 Ga. App. 720, 726 (c) (902 SE2d 715) (2024) ("There is nothing to indicate that a broader seizure in fact occurred in this case and thus nothing to indicate any harm. Indeed, where a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad." (punctuation omitted)); *Haynes v. State*, 317 Ga. App. 400, 402 (2) (731 SE2d 83) (2012) ("[E]ven assuming without deciding that the warrant in this case was overly broad because it authorized the seizure of images that could, . . . be irrelevant to a sexual exploitation of minors investigation, there is nothing to indicate that a broader seizure in fact occurred and thus nothing to indicate any harm. Indeed, where a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad." (punctuation omitted)); *see also Sasser v. United States*, 227 F2d 358, 359 (5th Cir. 1955) (holding that although one portion of search warrant describing the areas to be searched was "vague and indefinite," another portion was "definite and specific," and appellant was not harmed because only the definite and specific area was searched).

inclusion of overly broad provisions does not necessarily doom the warrant in its entirety" because "the warrant can be cured by redaction, that is, by striking from the warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment."[38] The trial court properly denied, then, Bibbs's motion to suppress on this ground.

For all these reasons, we affirm the trial court's judgment.

*Judgment affirmed. Mercier, C. J., and Land, J., concur.*

---

[38] *Pugh v. State*, 318 Ga. 706, 718 (2) (c) (899 SE2d 653) (2024).